GEORGE W. BOYCE & another[1] *vs.* GREATER LOWELL REGIONAL VOCATIONAL TECHNICAL SCHOOL DISTRICT.

Middlesex.    April 23, 1979. — May 23, 1979.

Present: KEVILLE, GOODMAN, & GREANEY, JJ.

*Eminent Domain,* Authority for taking, Validity of taking, Proceedings for damages. *Limitations, Statute of.*

The provisions of St. 1967, c. 94, § 6(*c*), grant an express delegation of eminent domain power to the Greater Lowell Regional Vocational Technical School District, and, therefore, St. 1971, c. 1029, which confirmed title to certain land acquired by agencies of the Commonwealth under defective eminent domain statutes and afforded landowners two years from its effective date to bring petitions seeking an assessment of damages, was not applicable to a taking under St. 1967, c. 94, § 6(*c*). [641-643]

A petition challenging the validity of a taking and also seeking an assessment of damages, which was filed more than two years after

---

[1] B. Elisabeth R. Boyce.

the order of taking was recorded, fell beyond the limitation periods in both G. L. c. 79, § 16 and § 18. [644-645]

PETITION for assessment of damages filed in the Superior Court on September 28, 1972.

The case was tried before *Bennett, J.*

*John J. McArdle (William H. Sullivan* with him) for the defendant.

*Eric A. Nissen (Richard L. Fox* with him) for the plaintiffs.

GREANEY, J. On August 31, 1970, the defendant, Greater Lowell Regional Vocational Technical School District (district), recorded an order pursuant to the provisions of G. L. c. 79[2] which made a taking of the plaintiffs' property for public purposes connected with the school district and awarded the plaintiffs damages under G. L. c. 79, § 6, in the amount of $35,000. More than two years later, on September 28, 1972, the plaintiffs filed a petition in the Superior Court in which they challenged the validity of the taking[3] and also sought that "damages sustained . . . by said taking be assessed by a jury as provided by [G. L. c. 79]."[4] At the time of trial the plaintiffs abandoned their attack on the validity of the taking and proceeded instead to seek an assessment of their damages before a jury.[5] At

---

[2] Statute 1967, c. 94, § 6(c), conferred upon the district the authority to acquire property by eminent domain under the provisions of G. L. c. 79 and § 14 of G. L. c. 40.

[3] Amendments to the petition questioned the validity of the taking on the basis that the district lacked authority to take land, that the land taken was not needed for a public use, or, if a public use was involved, that only a limited portion of the land taken was required for that use.

[4] A landowner can maintain an action challenging the validity of a taking of his property and at the same time either separately, or in the same complaint, seek an assessment of damages under G. L. c. 79, § 14. *Raimondo* v. *Burlington,* 366 Mass. 450 (1974).

[5] The plaintiffs argue in their brief that "they do not contest, nor do they intend to argue on appeal, that the *ultimate* taking of their property is unlawful or invalid. Rather, it is [their] contention . . . that the *initial* taking and/or procedure for taking was inappropriate,

the close of the plaintiffs' case, the defendant moved for a directed verdict under Mass.R.Civ.P. 50(a), 365 Mass. 814 (1974), on the sole ground that the plaintiffs' petition for assessment of damages had not been filed within the two year limitation period specified in G. L. c. 79, § 16 (i.e., by August 31, 1972). The judge denied the motion, and the jury assessed damages in excess of the damages voted and paid by the defendant. We conclude that the petition was not seasonably filed and that the defendant's motion for a directed verdict should have been allowed.

1. The plaintiffs argue that their petition was filed in a timely fashion because subparagraphs (c) and (d) of St. 1967, c. 94, § 6, which confer on the district the authority to take land and to incur debt to pay for the land taken[6] are an invalid legislative delegation of eminent domain power because the delegation is subject to the same infirmities that afflicted the taking statute discussed in *Newton* v. *Trustees of State Colleges*, 359 Mass. 668 (1971). Thus they assert that the taking was not validated until November 10, 1971, the effective date of St. 1971, c. 1029. The latter was a special legislative act

---

unlawful and invalid, especially insofar as it affects the crucial date of 'vesting' of rights within the purview of General Laws, Ch. 79, Sections 3, 14 and 16."

[6] Statute 1967, c. 94, § 6, provides in pertinent part as follows:
"The regional school district established under the provisions of section five shall be a body politic and corporate with all the powers and duties conferred by law upon school committees, and with the following additional powers and duties: —

. . . .
"(c) To acquire property within the municipalities comprising the district under the provisions of chapter seventy-nine and section fourteen of chapter forty of the General Laws, for the purposes of the district, and to construct, reconstruct, add to, remodel, make extraordinary repairs to, equip, organize and operate a school or schools for the benefit of the municipalities comprising the district, and to make any necessary contracts in relation thereto.
"(d) To incur debt for the purpose of acquiring land and constructing, reconstructing, adding to, and equipping a school building or buildings . . . ."

passed after the decision in *Newton* which confirmed title to certain land acquired by agencies of the Commonwealth under statutes having similar defects as the legislation discussed in *Newton,* and which afforded landowners two years from its effective date to bring petitions seeking an assessment of damages. If the plaintiffs are correct their action was filed in a timely manner.

In *Newton* the Supreme Judicial Court considered the efficacy of a taking made by the board of trustees of the State colleges pursuant to the provisions of St. 1968, c. 476, § 2, item 8069-52.[7] Because of the requirement that statutes delegating the power to appropriate private land for a public use "must be construed with reasonable strictness, so that no citizen shall be deprived of the use and enjoyment of his land except by a valid exercise of the appropriating power subject to which all private property is held," *Burnham* v. *Mayor of Beverly,* 309 Mass. 388, 389 (1941), the court determined that the statute under examination lacked an "explicit delegation of [taking] power to the defendants . . . ." *Newton, supra* at 670. Instructively, the court referred to the taking authority conferred on the board of regional community colleges under G. L. c. 15, § 28,[8] and on city councils under G. L. c. 40, § 14,[9] as examples of "explicit delegation" by the Legisla-

[7] Statute 1968, c. 476, was entitled, "An Act to provide for a capital outlay program for the commonwealth," and provided in § 1 that "the sums set forth in section two of this act . . . are hereby made available . . . ." In § 2, under the heading "Department of Education" and the subheading "Massachusetts College of Art," was the following item 8069-52: "For the acquisition of certain land, or land with buildings thereon, by purchase or by eminent domain under chapter seventy-nine of the General Laws . . . and for the preparation of plans . . . including plans for . . . facilities on a site to be determined by the trustees of state colleges . . . $500,000."

[8] The second paragraph of G. L. c. 15, § 28, as appearing in St. 1965, c. 572, § 7, provides in pertinent part that the board of regional community colleges shall "have the power to construct, lease or otherwise provide any facilities required for such colleges, including the right to take land for such purposes by eminent domain under the provisions of chapter seventy-nine."

[9] General Laws c. 40, § 14, as amended by St. 1967, c. 59, § 3, provides in pertinent part that the "aldermen of any city, except Boston, or the

ture of the power to appropriate private property. It appears that St. 1968, c. 476, was found lacking because it was silent as to what board of officers was to exercise the delegated power of eminent domain; it did not designate in whose behalf the takings were to be made as required by G. L. c. 79, § 1, and it referred vaguely to the taking of "a site to be determined" by the trustees. *Id.* at 669-670. The portions of the district's statute questioned here are not crippled by any such infirmities. They employ express language (1) to delegate taking authority (the regional school district shall have the power "[t]o acquire property within the municipalities comprising the district under the provisions of chapter seventy-nine. . . ."); (2) to designate that the district school committee would exercise the power; (3) to indicate that any takings made would be for the benefit of the district ("for the purposes of the district, and to construct, reconstruct, add to . . . organize and operate a school or schools for the benefit of the municipalities comprising the district . . . ."); and (4) to provide that the district may incur debt to acquire land by taking or otherwise. We are satisfied that the Legislature made an express delegation of eminent domain power to the defendant in St. 1967, c. 94, § 6(c), in a manner generally similar to the explicit delegations contained in G. L. c. 15, § 28, and G. L. c. 40, § 14, cited with approval in *Newton.*[10,11]

---

selectmen of a town may purchase, or take by eminent domain under chapter seventy-nine, any land . . . within the city or town not already appropriated to public use, for any municipal purpose . . . ."

[10] Indeed the provisions in St. 1967, c. 94, § 6(c) and (d), are nearly identical to the provisions of G. L. c. 71, § 16(c) and (d), which confer general taking authority and the authority to incur debt for property so acquired on regional school districts established pursuant to the provisions of G. L. c. 71, § 15.

[11] The other claimed defects in the order of taking argued on appeal are also without merit. The reservation of the district's right to amend the award of damages at any time prior to the payment thereof by reason of a change in ownership or a change in the value of the

Having concluded that the taking was effective as of August 31, 1970, when the order of taking was recorded, we turn to the question whether the plaintiffs' action seeking to contest the validity of the taking or to obtain an assessment of damages was brought in a timely manner within one of the limitation periods set forth in G. L. c. 79, §§ 16 and 18. Under the provisions of § 16, as amended by St. 1964, c. 579, § 6, a "petition for the assessment of damages . . . may be filed within two years after the right to such damages has vested . . .;"[12] and the right to damages vests on the date the order of taking is recorded. G. L. c. 79, § 3. Cases that have construed and applied the limitation period in § 16 have held that its requirements are inflexible. *L'Huilier* v. *Fitchburg*, 246 Mass. 349, 352 (1923). *Nicklas* v. *New Bedford*, 250 Mass. 471, 475 (1925). *Jordan* v. *Bristol County Commrs.*, 268 Mass. 329, 333 (1929). *Wine* v. *Commonwealth*, 301 Mass. 451, 455-456 (1938).

The provisions of § 18 contemplate the situation where the landowner wishes to contest the validity of the taking; they provide that if an action questioning the right of the public agency to effect a particular public improvement or to make a particular taking "is brought *within the time for filing a petition to the proper tribunal for an award or assessment of damages,*" an action for assessment of damages "may be filed within six months after the final determination of such suit" (emphasis supplied).

---

property "or for other good cause shown" terminated when the right to damages vested upon the recording of the taking order. The fact that the district could not incur debt for a period of thirty days from the date the debt was authorized by the district committee (St. 1967, c. 94, § 6[d]) did not extend the limitation period in which an action could be brought but merely prescribed one method by which the district could pay for the land acquired.

[12] Section 16 provides for an extension of the time within which a land damage suit may be brought if the landowner does not receive notice of the taking as required by G. L. c. 79, § 7C. It is uncontroverted in this case that the plaintiffs received notice of the taking and of their entitlement to damages at the time the order of taking was recorded.

Thus a landowner whose property is taken under c. 79 for a public purpose and who receives notice of the taking has two years from the date the order of taking is recorded either to commence an action questioning the validity of the taking or to seek an assessment of damages. If the landowner's action only questions the validity of the taking, and the taking is ultimately determined to be proper, the property owner by virtue of § 18 has an additional six months from the final conclusion of that action to file his petition for an assessment of damages. But § 18 expressly provides, as indicated, that an action questioning the validity of a taking must be filed within two years of the date that the right to damages vests if the owner wishes to pursue the question of damages in the event that the taking is determined to be valid. In this case the plaintiffs failed to file any action within two years after the date of recording of the order of taking. Their action filed on September 28, 1972, whether viewed as an action questioning the taking or as one seeking an assessment of damages, fell beyond the limitation periods in both § 16 and § 18, and the defendant was entitled to a ruling to that effect on its motion for a directed verdict. Accordingly, the judgment is reversed and a new judgment is to be entered for the defendant.

*So ordered.*