LOUISE WHITEHOUSE & others[1] vs. TOWN OF SHERBORN
& others.[2]

Middlesex.   February 12, 1981. — April 9, 1981.

Present: GRANT, BROWN, & GREANEY, JJ.

*Statute*, Construction.  *Eminent Domain*, Validity of taking, Proceedings
for damages.  *Limitations, Statute of.*

Discussion of the historical development and application of the provisions
of G. L. c. 79, §§ 16 and 18.  [671-675]
Landowners were barred by the limitations periods set forth in G. L.
c. 79, §§ 16 and 18, from bringing an action nearly twenty years after
an order of taking of their land had been recorded by which they
claimed the taking was invalid because the order was not recorded
within thirty days as contemplated by c. 79, § 3.  [675]
Although, in the circumstances, a motion to dismiss pursuant to Mass.
R.Civ.P. 12(b)(6) properly raised the issue whether an action for
declaratory relief was barred by a statute of limitations, the preferred
form of judgment was one which would declare the rights of the par-
ties.  [676]

CIVIL ACTION commenced in the Superior Court Depart-
ment on January 10, 1980.

The case was heard by *Morse, J.*

*Douglas W. Resnick* for the plaintiffs.

*Cathy J. Porter* (*Peter S. Terris* with her) for the defend-
ants.

GREANEY, J.   The plaintiffs brought an action in the
Superior Court in January, 1980, claiming that an order of
taking recorded by the town of Sherborn in May, 1960, was

---

[1] Twenty other individuals who claim a share of the title to the land in-
volved in this case.

[2] The town treasurer and the three members of the town's board of se-
lectmen.

invalid to vest title to the land described in the order in the town. The defendants moved under Mass.R.Civ.P. 12(b)(6), 365 Mass. 755 (1974), to dismiss the action because it was barred by the applicable limitations periods set forth in G. L. c. 79 and by laches. A judge of the Superior Court allowed the defendants' motion. The plaintiffs have appealed from the ensuing judgment.

The facts (which are uncontroverted) and the contentions of the parties may be summarized as follows. Each of the plaintiffs is either a cotenant in fee simple or is the heir of someone who was a cotenant in fee simple in January, 1960, of a ten-acre parcel of land in Sherborn. On March 9, 1959, the voters of the town authorized the selectmen to acquire the land, either by purchase or by eminent domain, as a site for a municipal dump. The selectmen adopted an order of taking on or about January 11, 1960. Shortly thereafter, the town made an entry on the land and commenced using it as a dump; this use has apparently continued to the present time without interruption. On May 10, 1960, the selectmen recorded the order of taking in the Middlesex South District registry of deeds. The funds appropriated by the town as compensation for the taking have never been paid. The plaintiffs' complaint was filed on January 10, 1980, and alleges in substance that the taking was and remains invalid because the order of taking was not recorded within thirty days, as contemplated by G. L. c. 79, § 3.[3] The plaintiffs sought: (a) declarations that the taking was void and that title to the land is held by them; (b) injunctive relief restraining the town from using the

---

[3] General Laws c. 79, § 3, as amended through St. 1964, c. 579, § 1, provided (and still provides) in pertinent part: "The board of officers by whom an order of taking has been adopted under section one shall within thirty days thereafter cause a copy thereof . . . to be recorded in the registry of deeds of every county or district in which the property taken or any of it lies. . . . Upon the recording of an order of taking under this section, title to the fee of the property taken or to such other interest therein as has been designated in such order shall vest in the body politic or corporate on behalf of which the taking was made; and the right to damages for such taking shall thereupon vest in the persons entitled thereto unless otherwise provided by law."

land as a dump; and (c) damages for the town's alleged continuing trespass and for the town's use and occupation of the premises over a twenty-year period. In the event the taking should be determined to be valid, the plaintiffs sought an assessment of damages for the land's fair market value.

None of the parties has suggested that the provisions of § 9 or § 10 of G. L. c. 79 have any application to the circumstances of this case. There also is no assertion that the parties entitled to notice did not receive notice of the taking or notice of their right to damages.[4] The pertinent portions of G. L. c. 79, § 16, as in effect in 1960 (as amended through St. 1950, c. 230), provided for the filing of a petition for assessment of damages within "one year after the right to damages has vested."[5] General Laws c. 79, § 18, as then (and now) in effect, provided that this period could be extended for an additional six months in certain circumstances if an action had been timely brought challenging the public agency's right to make the taking. The six-month extension was expressly predicated on commencement of an action questioning the taking's validity "within the time for filing a petition . . . for an award or assessment of the damages caused by . . . [the] taking." The plaintiffs acknowledge the presence of these limitations periods but contend that their action is not covered by either statute. They rely on the provisions of § 3 of c. 79, which contemplate that an order of taking framed pursuant to § 1 of that chapter will be recorded in the appropriate registry of deeds within thirty days of its adoption. Because § 3 makes vesting of both title to the land taken and the right to damages dependent "[u]pon the recording of an order of taking," the plaintiffs maintain that recording the order of

---

[4] As a result, those portions of G. L. c. 79, § 16, which provide for an extension of the limitations period in certain circumstances when either of these events occurs do not apply. See generally *Cann* v. *Commonwealth*, 353 *Mass.* 71, 73-74 (1967).

[5] By St. 1962, c. 797, § 1, this period was extended to two years.

taking in this case some 120 days after its adoption rendered the taking void. They ask us to hold that the town could acquire title only by adverse possession, and that their action is timely under the twenty-year limitations period provided by G. L. c. 260, § 21.[6] The defendants maintain, on the other hand, that the action is barred by the statutes of limitations set forth in G. L. c. 79, §§ 16 and 18, or by laches.

1. The establishment of a reasonable limitations period for actions arising out of takings of land for public use is a matter entrusted to the discretion of the Legislature. 1 Nichols, Eminent Domain § 4.102[2] (rev. 3d ed. 1980). In land damage cases these statutes place the initiative on the landowner, once he receives notice of the taking, to press his challenge to the validity of the taking or his claim for damages. Underlying the statutes are important public policy considerations, the most obvious of which is the need for an efficient and final determination of any dispute regarding a public landtaking, so that title to the land taken can be settled, damages for the taking assessed, and the construction of the public improvement undertaken and completed. As to these goals, Chief Justice Holmes said: "In [land damages] cases. . . , when the period of limitations is short, no doubt other . . . important elements are predominant — the desirableness for business reasons of getting a . . . public transaction finished — but whatever the details, the principle involved is as worthy of respect as any known to the law." *Dunbar* v. *Boston & Providence R.R.*, 181 Mass. 383, 385 (1902).

With these considerations in mind, the historical development of §§ 16 and 18 and the relevant case law applying their provisions merit discussion because "[t]he intention of

---

[6] General Laws c. 260, § 21, reads as follows: "An action for the recovery of land shall be commenced, or an entry made thereon, only within twenty years after the right of action or of entry first accrued, or within twenty years after the demandant or the person making the entry, or those under whom they claim, have been seized or possessed of the premises, except as hereinafter provided."

the General Court in enacting any statute must be ascertained, not alone from the literal meaning of its words, but from a view of the whole system of which it is but a part, and in light of the common law and previous statutes." *Pereira* v. *New England LNG Co.*, 364 Mass. 109, 115 (1973), quoting from *Armburg* v. *Boston & Me. R.R.*, 276 Mass. 418, 426 (1931), aff'd, 285 U.S. 234 (1932). Both § 16 and § 18 share common roots in earlier statutes which sought to establish settled limitations periods for land damage actions. One of the earliest of this class of statutes was Prov. St. 1956-1957, c. 18, § 2, which addressed the problem in these terms:

> "[I]f such person or persons so damaged find him- or themselves agrieved [*sic*] by *any act or thing done* by the said committee, in laying out said way *or* estimate [*sic*] of his or their damages, he or they may apply unto the court of general sessions of the peace, *provided such application be made to the court that shall be held in such county next after such return; . . .*" (emphasis supplied).

This statute remained essentially unchanged until 1849,[7] when it was rewritten (by St. 1849, c. 200, and thereafter by St. 1857, c. 133) in a form which bears a close resemblance to the present § 18. The revised statute (as codified in Gen. Sts. c. 43, § 22 [1860]) read as follows:

> "Applications for a jury to revise the judgment of the commissioners in the assessment of damages merely, or in the award of indemnity, may be made at any time within one year from the time of the adoption of the order; or, if within that time a suit shall be instituted wherein the legal effect of the proceedings of the com-

---

[7] See St. 1786, c. 67, § 4; St. 1826, c. 171, § 5; Rev. Sts. c. 24, §§ 13, 14, 68 & 76 (1836).

missioners . . . is drawn in question, such application may be made at any time within one year after the final determination of the suit."

This version remained in force until the Legislature enacted[8] (by St. 1918, c. 257, § 187) a comprehensive revision of the procedural provisions of the various eminent domain laws. That consolidation created a single coherent system of procedure "so that everybody concerned will know how to take land by eminent domain and how to ascertain whether land or any interest therein has been seized under the power of eminent domain."[9] *Watertown* v. *Dana*, 255 Mass. 67, 71-72 (1926). The 1918 consolidation adopted the basic concepts with respect to limitations that had been expressed in Gen. Sts. c. 43, § 22 (1860), and it incorporated these concepts into R. L. c. 48A, §§ 16 & 18 (1902), inserted by St. 1918, c. 257, § 187 (now G. L. c. 79, §§ 16 & 18).[10] There is no doubt that, by enacting c. 79, the Legislature meant to fashion an exclusive statutory remedy for takings made thereunder (see 6 Nichols, Eminent Domain, *supra* § 24.2), nor any doubt that the limitations periods expressed therein were designed to limit the right as well as the remedy. *Wine* v. *Commonwealth*, 301 Mass. 451, 455-456 (1938), and cases cited.

---

[8] See Pub. Sts. c. 49, §§ 33 & 79 (1882); St. 1892, c. 415, § 1; R. L. c. 48, §§ 28 & 80 (1902); St. 1917, c. 344, pt. 2, §§ 28 & 54.

[9] Chapter 79 was designed to update and modernize "[t]he law in Massachusetts relating to takings of land [which] is not in any sense a code, but [which] is made up of a large number of different statutes which have been incorporated from time to time into the various revisions of the statutes, with little attempt to harmonize the various enactments." Report of the Commissioners to the Legislature Relative to Uniform Methods and Procedure for Taking Land for Public Purposes, 1915 House Doc. No. 1750, at 57. The numerous Massachusetts statutes regulating takings and the diverse procedures established in these statutes are discussed at length in this report and at 2A Nichols, Eminent Domain, *supra* §§ 6.42-6.42[12].

[10] Subsequent amendments to § 16 by St. 1936, c. 187, § 2; St. 1938, c. 185; St. 1943, c. 95, and c. 251, § 3; and by St. 1950, c. 230, did not change the statute materially for purposes of the question before us.

Turning to the cases decided under various limitations statutes prior to the adoption of §§ 16 and 18, we find uniform holdings that an owner's failure to bring an action for damages within the prescribed limitations period results in the action's being barred. See *Eaton* v. *Framingham*, 6 Cush. 245, 246-247 (1850); *Bennett* v. *County Commrs. of Worcester*, 4 Gray 359, 360 (1855); *Childs* v. *County of Franklin*, 128 Mass. 97, 98-99 (1880). Cf. *Thorndike* v. *County Commrs. of Norfolk*, 117 Mass. 566, 568-569 (1875) (despite timely petition for assessment of damages, land-owner's failure to see that jury warrant was processed with-in the three-month period prescribed by Gen. St. c. 43, § 40 [1860], barred the claim). See also Annot., 12 ALR 3d 7 (1967). Where relief was granted from the effect of the limitations period, it was generally provided by way of a special enactment of the Legislature. See, for example, *Danforth* v. *Groton Water Co.*, 178 Mass. 472, 477-478 (1901); *Dunbar* v. *Boston & Providence R.R.*, 181 Mass. at 386-387. Cases decided after the enactment of c. 79 have held that time periods expressed therein for bringing suit are inflexible.[11] *L'Huilier* v. *Fitchburg*, 246 Mass. 349, 352 (1923). *Nicklas* v. *New Bedford*, 250 Mass. 471, 475 (1925). *Jordan* v. *County Commrs. of Bristol*, 268 Mass. 329, 333 (1929). *Wine* v. *Commonwealth*, 301 Mass. at 455-456. *Boyce* v. *Greater Lowell Regional Vocational Technical*

---

[11] Our research has disclosed the cases of *Moore* v. *Sanford*, 151 Mass. 285 (1890); *Appleton* v. *Newton*, 178 Mass. 276 (1901); and *Caleb Pierce, Inc.* v. *Commonwealth*, 354 Mass. 306 (1968), wherein challenges to the validity of takings were entertained on their merits after the limitation periods had passed. We note, however, that unlike the present case, those cases questioned the constitutionality of various eminent domain statutes on such fundamental grounds as lack of notice, *Appleton* at 277, 281, 282, and the sufficiency of stated public purposes, *Moore* at 286-287; *Caleb Pierce, Inc.* at 307-308. See also *North Reading* v. *County Commrs. of Middlesex*, 7 Gray 109, 112-113 (1856). Moreover, the fact that a land-owner may now challenge the validity of a taking simultaneously with a petition for the assessment of damages supports our conclusion that assert-ed errors of a technical nature, such as the recording deficiency here, must be raised within the time limitations set forth in c. 79. See *Raimondo* v. *Burlington*, 366 Mass. 450, 451-452 (1974).

*Sch. Dist.*, 7 Mass. App. Ct. 639, 644-645 (1979). It is especially important to point out that the decisions relied upon by the plaintiffs for the proposition that the taking was a nullity — *Watertown* v. *Dana*, 255 Mass. at 72, and *Radway* v. *Selectmen of Dennis*, 266 Mass. 329, 333-334 (1929), which invalidated takings for defects similar to the one involved in this case — both were rendered in connection with actions which had been brought within the pertinent time period. See *Watertown* v. *Dana, supra* at 68-69; *Radway* v. *Selectmen of Dennis, supra* at 331, 333. These cases did not deal with the instant situation, where an action contesting the validity of the taking has been filed well beyond the statutory period. They cannot be taken as authority for a rule that a late recording of an order of taking renders the taking void and open to attack anytime within a twenty-year period.

In light of the historical progression of the statutes and the reasonably settled state of the precedent, we think that the provisions of §§ 16 and 18 constitute a shield against late-filed claims like those presented by the plaintiffs. At best (from the plaintiffs' point of view), the limitations period would have begun to run at the time of the late recording. Thus, late recording of an order of taking is not a failure of a degree that would render the taking a nullity in an action which raises that question almost two decades later. So to hold would be fundamentally at variance with the principles of predictability and finality which lie at the core of c. 79. While the plaintiffs might have been entitled to some or all of the relief they now seek had they brought suit in a timely fashion (see discussion in 6A Nichols, Eminent Domain, *supra* § 28.3; compare *Watertown* v. *Dana, supra* at 71-72; *Radway* v. *Selectmen of Dennis, supra* at 333-335), their failure to do so results in their present action being foreclosed. *Boyce* v. *Greater Lowell Regional Vocational Technical Sch. Dist.*, 7 Mass. App. Ct. at 644-645. In view of this conclusion it is not necessary to decide the questions argued as to the applicability of the laches.

2.  The parties have not raised any procedural question with respect to the use of a rule 12(b)(6) motion to raise the issue of the statute of limitations in an action which requests declaratory relief.  Since the dispositive facts are undisputed and appear on the face of the complaint, or are assumed in both briefs, we believe that a motion to dismiss could properly present the question.  See *Larkin* v. *Charlestown Sav. Bank*, 7 Mass. App. Ct. 178, 181 & n.6, 185-186 (1979); Smith & Zobel, Rules Practice § 12.13 (1974).  The preferred form of judgment, however, would be one which declares the rights of the parties.  The judgment of dismissal is to be vacated.  A new judgment shall be entered declaring that the plaintiffs' action is barred by the statute of limitations set forth in G. L. c. 79.

*So ordered.*