EMMA F. ELDREDGE[1] & others[2] *vs.* BOARD OF SELECTMEN
OF BREWSTER.

Barnstable.  May 11, 1984. — September 4, 1984.

Present: BROWN, CUTTER, & KASS, JJ.

*Limitations, Statute of.  Eminent Domain,* Proceedings for damages, Right
to recover damage award.

Where an award of damages for a taking by eminent domain had been made
to persons unknown in accordance with G. L. c. 79, § 7D, an action
under G. L. c. 79, § 41, to recover the amount awarded, brought some
five years after the taking, was not barred by the two-year limitation
period provided by G. L. c. 79, § 16, for contesting the validity of a
taking or the amount of damages. [504-507]

CIVIL ACTION commenced in the Superior Court on October
6, 1975.

The case was heard by *Lynch, J.,* on a motion for judgment
on the pleadings.

The case was submitted on briefs.
*John D. Hallisey & David H. Tately* for the plaintiffs.
*Edward E. Veara & Paul V. Benatti* for the defendant.

KASS, J.   More than five years after an eminent domain
taking by the selectmen of Brewster, substantially beyond the
two-year limitation period for damage petitions then prescribed
by G. L. c. 79, § 16, the plaintiffs brought a complaint to recover
an award the selectmen had made on account of the land to which
the plaintiffs claim title. The question for decision is whether the
plaintiffs' claim is time-barred, as a Superior Court judge decided,
or whether it has life under G. L. c. 79, § 41.

---

[1] Upon motion, substituted for Elnathan E. Eldredge, Jr., as a plaintiff,
after his death.

[2] Eldredge E. Sparrow, individually and as trustee, and Lillian F. Edwards,
trustee.

The record below was established in accordance with Mass.R.A.P. 8(d), as appearing in 378 Mass. 934 (1979), and the facts necessary to the resolution of the appeal are undisputed. In their order of taking, recorded August 19, 1970, the selectmen awarded $50,200 as just compensation for the land in question (the "locus"). Unable to determine who owned the ten parcels which made up the locus, the selectmen attributed ownership to persons unknown and presumably (the record is obscure on the point) paid the award to the town treasurer conformably with G. L. c. 79, § 7D.[3] As to one parcel of 6.90 acres, the town paid the award made, $6,000, to the plaintiffs. So far as the other nine parcels were concerned, the plaintiffs made no effort to obtain payment until October 6, 1975, when they filed a complaint alleging that a demand had been made under G. L. c. 79, § 41, and, in addition to a declaration of their rights (a less than apt choice of procedure), seeking payment of the award with accumulated interest.

It is not necessary to elucidate the settled proposition that a person claiming damage to property by exercise of the power of eminent domain must file a petition for assessment of damages within the period provided in G. L. c. 79, § 16.[4] See, e.g., *Briggs* v. *Boston,* 230 Mass. 148, 151 (1918); *Nicklas* v. *New Bedford,* 250 Mass. 471, 474-475 (1925); *Wine* v. *Commonwealth,* 301 Mass. 451, 455-456 (1938); *Boyce* v. *Greater Lowell Regional Vocational Technical Sch. Dist.,*

---

[3] Under G. L. c. 79, § 7D, as appearing in St. 1970, c. 795, § 1, the treasurer of the taking authority holds the award in a savings account for the benefit of whatever persons are entitled to the award. If no person claims the award, the money escheats to the Commonwealth. See G. L. c. 200A, §§ 3, 8A, & 9. At the times material in this case, the property deposited would have been presumed abandoned if not claimed within fourteen years. G. L. c. 200A, § 3, inserted by St. 1950, c. 801, § 1. By St. 1981, c. 351, § 102, the time in which the property was presumed abandoned was reduced to five years.

[4] That period, by reason of the enactment of St. 1982, c. 248, § 1, is now three years. At the times material to this case, the time was two years. See St. 1962, c. 797, § 1. Prior to 1962, the period was one year. See St. 1918, c. 257, § 187. An extension of six months, as to persons who receive no notice of taking, from the time of actual notice or possession of the property taken, whichever first occurs, is not here relevant.

7 Mass. App. Ct. 639, 644-645 (1979). That statutory limitation period applies not only to controversies over the amount of damages (the usual petition for an assessment of damages), but as well to disputes over whether a taking has occurred or damages have been inflicted. See *Whitehouse* v. *Sherborn,* 11 Mass. App. Ct. 668, 671-675 (1981), in which we called to attention that the Legislature, in the interest of affording public agencies predictability and finality concerning their obligations when they take private property, has opted for an exclusive statutory remedy to vindicate damage to land taken for a public purpose.

Indeed, in *Selectmen of Brewster* v. *Sparrow,* 15 Mass. App. Ct. 988 (1983), a case related to and ordered consolidated with the one now before us (but in which § 41 was not alluded to by the parties), we suggested that the plaintiffs' complaint was a candidate for a motion to dismiss on the authority of the line of cases we have just referred to. The selectmen took up the suggestion and filed such a motion, and a judge of the Superior Court, with a bow to *Selectmen of Brewster* v. *Sparrow, supra,* understandably allowed the motion. From the ensuing judgment dismissing the complaint, the plaintiffs have appealed.

What, then, are we to make of G. L. c. 79, § 41? It provides that, "If no petition under section fourteen is filed within the time limited, the award of damages shall be final and the amount thereof shall be paid upon demand, and if not so paid may be recovered in an action of contract." By its very text, the statute creates a cause of action on a contract theory beyond the time limitation established by § 16 for actions brought under § 14, the section which authorizes petitions for assessment of damages. We have no doubt, therefore, that a person to whom a taking authority has awarded damages, but who has failed to pick up the money within the § 16 time limit, still has six years (G. L. c. 260, § 2) from the date the right to eminent domain damages vested to bring an action to claim the funds set aside in that person's name.

In the instant case the award on account of the locus was made not to the plaintiffs but to persons unknown and the next,

and residual, question is whether a claimant for damages to a person unknown must present himself within the time limit set generally for eminent domain claims by § 16, or may exercise the right to establish title to the land taken under the more generous time limit of § 41. Legislative history affords relatively little guidance.

The current version of § 41 came on the statute books in the consolidation and reorganization of the eminent domain statutes effected by St. 1918, c. 257, § 187. Its roots appear in St. 1874, c. 372, § 1, which consolidated provisions of general statutes relating to railroads into a "General Railroad Act." Section 67 of the General Railroad Act, one of seven sections which dealt with eminent domain takings by railroads and the payment of damages, provided that if a party were dissatisfied with the estimate of damages made by county commissioners, it could apply for a jury to assess the damages. If, however, "no such application be made, the county commissioners, after the expiration of said term of one year, may issue warrants of distress to compel the payment of damages . . . ." Thus, the statutory scheme early differentiated between the time for contesting damages and receiving payment of the damage award. That separate right to recover the damage award (now appearing in G. L. c. 79, § 41) was adverted to in *Willar* v. *Commonwealth,* 297 Mass. 527, 528 (1937). The earlier statutory and decisional law had no occasion to consider the case of the unknown claimant.

By St. 1964, c. 579, § 3, however, the Legislature, through its insertion of G. L. c. 79, § 7D, gave consideration to the unknown or uncertain owner. That act, as we have noted, provided for the payment of the taking award into a special account.[5] Upon having satisfied the taking authority "of his right to receive it," the amount so deposited was to be "transferred" to the "person entitled to such amount or any portion

---

[5] Under the section as first enacted by St. 1964, c. 579, § 3, the taking authority was required to deposit the award with the judges of the Superior Court. That procedure was altered by St. 1970, c. 795, § 1, so that the amount set aside was held at interest in a segregated account by the treasurer of the taking authority.

thereof." G. L. c. 79, § 7D.[6] Under § 7D, the segregated account remains in existence until presumed abandoned in accordance with G. L. c. 200A, § 3, and the operation of the escheat procedures set forth in G. L. c. 200A, §§ 7, 8, and 8A. See note 3, *supra*. Even as shortened by St. 1981, c. 351, § 102 (see note 3, *supra*), the time before the escheat mechanism begins to work is longer than the limitation period in G. L. c. 79, § 16.[7] Had the Legislature intended to limit the assertion of rights to eminent domain awards by unknown persons to the § 16 limitation period, the unconditional reference in § 7D to c. 200A (in the sense that the time of presumed abandonment was tied to c. 200A rather than to G. L. c. 79, § 16) would have been superfluous, contrary to the canon that no portion of statutory language may be deemed superfluous. *Commonwealth* v. *Gove,* 366 Mass. 351, 354 (1974). *Devaney* v. *Watertown,* 13 Mass. App. Ct. 927 (1982).

Reading § 41 conjunctively with § 7D, we are led to the conclusion that the right conferred by § 41 to recover (but not contest) an eminent domain award of damages made by a taking authority covers the case of a claimant who seeks to establish his right to the award by proving his ownership at the time of the taking. That conclusion does no violence to the many cases which have required that challenges of an award or an aspect of a taking adhere to the time limitations of § 16. As we observed in *Whitehouse* v. *Sherborn,* 11 Mass. App. Ct. at 671, the policy underlying rigorous application of the § 16 limitation period "is the need for an efficient and final determination of any dispute regarding a public landtaking, so that title to the land taken can be settled, damages for the taking assessed, and the construction of the public improvement

---

[6] Prior to the amendment effected by St. 1970, c. 795, § 1, the claimant was required to satisfy the Superior Court of his right to receive the award of damages.

[7] It is possible, although not likely, since a deposit of the sort here at issue is now presumed abandoned after five years, that property could escheat before expiration of the six year statute of limitations for contract actions. Such a sequence is improbable because of the time required to go through the steps prescribed in G. L. c. 200A, §§ 7 and 8.

undertaken and completed." Neither the validity of the taking nor the amount awarded can be disturbed by an action under § 41. The public improvement is nowise called into question or delayed. The taking authority is bound to part with the award in any event, either to a party proving entitlement to the award in an action under § 41, or to the Commonwealth under G. L. c. 200A.[8]

A final question is whether the concluding sentence added to § 7D by St. 1970, c. 795, § 1, curtails actions under § 41 to recover funds deposited under § 7D. That sentence says: "No action by a taking authority under the provisions of this section [i.e., § 7D] shall be construed so as to prevent or delay the operation of section sixteen." We read that savings clause as assuring that § 7D will not be construed to defer the date when the right to damages has vested for purposes of calculating under § 16 the time during which petitions under § 14 may be brought. Such a delay could, indeed, subject a taking authority to the uncertainty which § 16 is designed to avoid. As we have seen, however, a § 41 action does not bear on those factors.

In view of our opinion that the plaintiffs may attempt, in the context of an action under G. L. c. 79, § 41, to establish their entitlement to the unpaid award of damages made by the selectmen, the judgment dismissing the complaint is reversed.

*So ordered.*

---

[8] We do not overlook that in a certain sense the Commonwealth, when it is the taking authority, benefits from the transfer of funds to it under G. L. c. 200A, although there will be a shift in the funds from the budget of the agency making the taking to the general fund.