PAUL V. McLAUGHLIN & another[1] *vs.* TOWN OF MARBLEHEAD.[2]

No. 06-P-119.

Suffolk. October 10, 2006. - March 23, 2007.

Present: KAFKER, GRAHAM, & KATZMANN, JJ.

*Way,* Public: what constitutes, establishment. *Adverse Possession and Prescription. Easement. Real Property,* Easement.

In an action to register title to three parcels of land, one of which the defendant town claimed was a public way, the Land Court judge properly granted summary judgment in favor of the plaintiff owners of the parcels, where the town failed to establish that the parcel in question was subject to the rights of the public, in that the town's failure to take possession of the parcel within two years after a laying of roads caused title to revert to the plaintiffs' predecessor in interest [495-499], and in that the town did not demonstrate the requisite corporate action to establish a prescriptive easement, nor continuous or adverse use [499-502].

CIVIL ACTION commenced in the Land Court Department on August 4, 1997.

The case was heard by *Karyn F. Scheier,* J., on motions for summary judgment.

*Maria E. DeLuzio* for the defendant.

*Peter Alley* for the plaintiffs.

KATZMANN, J. In September, 1994, Paul V. and Patricia A. Mc-Laughlin received and recorded a deed for three contiguous parcels of land on Marblehead Neck in Marblehead. Shortly thereafter, to the distress of the McLaughlins, at the boundary of one of those parcels, Fishing Point Lane (also referred to as the property), the town of Marblehead (town) posted a sign

---

[1]Patricia A. McLaughlin.

[2]The Commonwealth filed an answer to the plaintiffs' complaint, and joined in the cross motion for and the opposition to summary judgment, but its motion to enlarge time for filing an appeal was denied, and it did not participate in the briefing of this appeal.

which read "To the Water. Please Enjoy This Public Way." The town also began listing Fishing Point Lane as a public way in various town publications, and use of the property by the public, which had been minimal, intensified.

In an effort to secure a judicial determination regarding whether the public had any rights in the property, in August, 1997, the McLaughlins filed a registration petition pursuant to G. L. c. 185, § 1, seeking to register title to the three contiguous parcels of land. In that petition, the McLaughlins "denie[d] any rights of others" in Fishing Point Lane, and "[sought] to have the same eliminated." The town and the Commonwealth answered, asserting, inter alia, that a 1918 layout gave the public the right to access the property. Agreeing that there were no material facts in dispute, the parties submitted the matter to the Land Court on cross motions for summary judgment. On August 3, 2001, a Land Court judge allowed the McLaughlins' motion for summary judgment and denied the town's motion for summary judgment,[3] ruling that as matter of law, Fishing Point Lane is not a public way. The judge specifically found that (1) the 1918 layout of Fishing Point Lane was void under the controlling statute, St. 1917, c. 344, part 2, § 63, where there was no evidence that the town ever took possession of Fishing Point Lane within two years of the laying out; (2) the plaintiffs were not barred by the statute of limitations from registering Fishing Point Lane; (3) the plaintiffs were not barred from registering Fishing Point Lane based on a previous Land Court decision involving a different Marblehead Neck parcel and different issues; (4) the town did not have rights over Fishing Point Lane by common deed; (5) the town could not establish that Fishing Point Lane was a public way by prescription where there was no evidence that the town ever exercised dominion and control of Fishing Point Lane and no evidence of adverse use for twenty years; and (6) the plaintiffs were not estopped from seeking to register the property by their conduct

---

[3]Prior to issuing her decision on the parties' cross motions for summary judgment, the Land Court judge denied the McLaughlins' two motions for a preliminary injunction to prevent public use of the property during the pendency of the proceeding. A single justice of this court subsequently granted the injunction, a decision that was upheld by a full panel of the court. *McLaughlin* v. *Marblehead*, 54 Mass. App. Ct. 1116 (2002).

or any conduct by their predecessors in interest. On February 9, 2005, the judge entered a judgment of registration on the three parcels. The town appeals from that judgment. We affirm.

1. *Background*.[4] As noted, the property the McLaughlins sought to register is comprised of three parcels. Parcel one, also known as 297 Ocean Avenue, is 10,384 square feet and contains the plaintiffs' residence. Parcel two is approximately 8,000 square feet and is located between parcel one and the low water mark. Parcel three, Fishing Point Lane, which runs alongside the parcel containing the plaintiffs' residence, is the subject of this appeal. The three parcels were originally owned by Robert C. Bridge as a portion of a larger property on Marblehead Neck.

a. *Ownership of Fishing Point Lane*. The chain of title for the property is as follows. On or about September 24, 1994, the McLaughlins recorded a deed from Klaus and Karin Stelzer for all three parcels. The Stelzers received all three parcels by deed from Jean O. Bramble, trustee of the Rabbit Realty Trust, on June 2, 1986. The Rabbit Realty Trust received all three parcels by deed on August 1, 1983, from Robert C. and Jean O. Bramble.

The Brambles' involvement with the three parcels began on April 24, 1973, when they received a deed to parcel one from the trustees of Trust B under the will of George D. Haskell. They received parcel two by deed dated November 9, 1973, and Fishing Point Lane by deed dated March 26, 1976,[5] both of the latter deeds from Martha B. Speck and Robert P. Brackett, who are the heirs of Mary B. Brackett (Mary Brackett). Mary Brackett is the daughter of Bridge.

b. *The 1918 layout*. On January 8, 1918, the town held a public hearing to address a petition by Bridge requesting the laying out of roads on Marblehead Neck. On the same day, the selectmen of the town executed a document entitled "Marblehead Neck Description of Street Layouts February 1918 Thomas A. Appleton" (1918 layout), purporting to lay out twenty-two

---

[4]As the facts are undisputed, they are taken directly from the decision of the judge, except where otherwise noted. The judge drew most of these facts from the joint stipulation of facts.

[5]This deed stated, "The Grantors hereby convey only that title which they may presently own in the area and make no warranties as to title."

streets and ways. The 1918 layout was filed with the town clerk on January 11, 1918. Fishing Point Lane was listed on the 1918 layout. By vote at a town meeting, the amount of $325 was approved for expenses associated with the laying out.[6] Besides approving this sum, it does not appear from the record that the town took any action relating to the property at that time. Whether the town entered other ways created by the 1918 layout, and for what purpose, is not in evidence. There is no evidence in the record that Bridge or any other owner of the property ever deeded it, or granted an easement thereon, to the town.

c. *Subsequent action involving the property.* On June 20, 1932, Mary Brackett filed a registration petition in the Land Court seeking to register several parcels, including two that were subject to the 1918 layout. After the town objected to the registration, the parties negotiated a settlement that included, among other provisions, Mary Brackett's transfer of Fishing Point Lane to the town. Article 34 of the 1933 town meeting warrant authorized the selectmen to accept a deed from Mary Brackett for Fishing Point Lane, among other properties, in the negotiated settlement to her Land Court action. The parties never executed this agreement, and the town was eventually defaulted in Mary Brackett's registration action.

The town took an additional action relating to the subject property during this period. The town's selectmen voted in February, 1933, to place an article in the town warrant seeking validation of the 1918 layout by the Legislature. There is no evidence in the record that such legislative action was ever taken.

d. *Use, improvement and taxation of Fishing Point Lane.* Since 1918, the town has not graded, paved, posted signs on, regulated traffic on, or performed maintenance on Fishing Point Lane. Prior to the McLaughlins' purchase of the three parcels the town intermittently discussed taking action on the property.[7] As noted, in September, 1994, the town posted a sign at the end

---

[6]While $253.86 was disbursed to Appleton for services, there is no evidence that the remainder was ever distributed.

[7]Work on the property was discussed in two town selectmen's meetings, in 1974 and 1980. The minutes of a July 10, 1974, meeting report proposed

of Fishing Point Lane, indicating that it was a public way. Also around that time, the town began listing the property among other Marblehead Neck "public rights of way" in various town publications. Lastly, town records indicate that perambulations of "certain ways on Marblehead Neck," including Fishing Point Lane, occurred in 1962, 1973, 1989, 1992, and 1994.[8]

An aerial photograph indicates that in 1938, Fishing Point Lane remained undeveloped. According to the affidavit of Jean Oliphant (formerly Bramble), Fishing Point Lane remained in a similar condition throughout the 1970's.[9] The Brambles laid down gravel on Fishing Point Lane sometime between 1976 and 1986.

From 1977 to 1996, the town assessed real estate taxes on the record owners of Fishing Point Lane. Beginning in 1996, the town returned the McLaughlins' 1996 first and second quarter preliminary real estate tax payments on the property. The town has not assessed taxes on the property since 1996. Prior to 1976, it does not appear that taxes were assessed on Fishing Point Lane.

There is evidence in the record of sporadic use of Fishing Point Lane by the public. Oliphant stated in her affidavit that she observed a few dozen people using Fishing Point Lane between 1973 and 1986. Similarly, Klaus Stelzer stated in an affidavit that on "infrequent occasions" between 1986 and 1994

work on Fishing Point Lane, including the removal of hedges and poison ivy and the possible installation of steps. The Brambles were present at this meeting and suggested that they could install steps made of railroad ties. Similarly, at a November 5, 1980, meeting, the selectmen discussed the installation of steps. There is no evidence that these projects were ever started.

Development of the property was also proposed in a 1995 grant application by the town to the State. Although the town did receive the grant, the Fishing Point Lane project was not included in the final grant proposal.

[8]See G. L. c. 42, § 2, which requires selectmen of every town to mark the town's boundaries once every five years and record the proceedings. Prior to the amendment in 1973, see St. 1973, c. 231, § 1, the section read: "The boundary lines of every town shall be perambulated . . . once in every five years, by two or more selectmen of each town . . . and the proceedings shall be recorded in the records of each town."

[9]Oliphant's affidavit also indicates that until the 1970's, rose bushes lined the borders of the three parcels, including Fishing Point Lane, which remained grass-covered, and that the lane merged with the yard of the parcel containing the house.

he observed a fisherman walking across the property. This use temporarily increased to "crowds" when the town posted a public access sign at the end of the property in 1994, until 2000, when a single justice of this court issued a preliminary injunction restraining the town and public from entering into the property without permission from the McLaughlins.

2. *Discussion.* Pursuant to Mass.R.Civ.P. 56, 365 Mass. 824 (1974), a party moving for summary judgment bears the burden of proving that there is no dispute of material fact and that he is entitled to judgment as a matter of law. *Pederson* v. *Time, Inc.,* 404 Mass. 14, 17 (1989). *Flesner* v. *Technical Communications Corp.,* 410 Mass. 805, 808-809 (1991). The parties stipulated to the material facts, and each asserts that it is entitled to judgment as matter of law on the public's right of access across Fishing Point Lane. Our review is de novo.

The town, as the proponent of public rights in Fishing Point Lane, bears the burden of proof. See *Witteveld* v. *Haverhill,* 12 Mass. App. Ct. 876, 877 (1981). An existing way acquires status as a public way in one of three ways: (1) a laying out by public authority, in the manner prescribed by statute; (2) prescription; and (3) prior to 1846, a dedication by the owner to public use, permanent and unequivocal, coupled with an express or implied acceptance by the public. *Fenn* v. *Middleborough,* 7 Mass. App. Ct. 80, 83-84 (1979). *Rivers* v. *Warwick,* 37 Mass. App. Ct. 593, 594-595 (1994). *Martin* v. *Building Inspector of Freetown,* 38 Mass. App. Ct. 509, 510 (1995). As Fishing Point Lane was not created before 1846, the third procedure for determining whether the way is public is inapplicable. We address the remaining two alternatives below.

a. *Laying out pursuant to statute.* In 1918, communities were authorized to lay out public ways pursuant to the provisions of St. 1917, c. 344, part 2.[10] Acting pursuant to these provisions, the town declared numerous public ways, including Fishing Point Lane, in the 1918 layout. As the parties concede that a prior Land Court case, involving a different way on Marblehead

---

[10]The parties agree that the 1917 statute, entitled "Of the laying out and discontinuance of ways, and damages caused by the taking of land for public uses," portions of which were subsequently codified, was in effect at the time of the 1918 layout.

Neck, already determined that the town satisfied the requisite provisions, we need not review the town's statutory compliance in establishing the 1918 layout. See Colby *vs.* Marblehead, Land Court, No. 44116 (April 30, 1973) (finding 1918 layout complied with St. 1917, c. 344, part 2, § 45).[11] Our analysis thus assumes that Fishing Point Lane was at one time a public way.

The issue before us is the effect of the 1918 layout, given the subsequent actions, or more significantly, the lack thereof, by the town. The McLaughlins assert that the judge correctly applied St. 1917, c. 344, part 2, § 63, which provides that a laying out is void if a town does not take possession within two years "for the purpose of constructing, relocating or altering" the way. The judge therefore held that due to the absence of evidence in the record of the town's having taken possession of the property within two years, § 63 operated to void the 1918 layout. We concur. Operation of § 63, which automatically voided the town's action, caused title to the property to revert to Bridge.

The town's argument that the payment to Appleton for services and the entry onto other portions of the 1918 layout were sufficient to prevent the operation of § 63 is unavailing. First, as the judge correctly pointed out, there is no evidence in the record that the town entered onto other public ways set forth in the 1918 layout within the requisite two-year period. Second, even if there were sufficient evidence, evidence of entry onto another way is insufficient, as § 63 operates for each way individually. See St. 1917, c. 344, part 2, § 63 ("The laying out . . . of any way under the provisions of Part 2 of this act shall be void as against the owner of any land over which the same is located, unless possession is taken of such land . . . within two years . . .").[12] Lastly, there is no evidence in the record that the payment to Appleton was for the purpose of constructing,

---

[11]Contrary to the town's assertion, the Colby decision is distinguishable and therefore does not control the remaining analysis. See Colby *vs.* Marblehead, *supra* at 4 (only addressing statutory compliance with notice provisions — not subsequent taking of possession — and noting that owner acknowledged regular public use of way).

[12]The town suggests that § 63 can be interpreted to support the opposite proposition, namely, that entry upon any one of the twenty-two ways involved

relocating or altering Fishing Point Lane.[13] Therefore, the town cannot demonstrate that Fishing Point Lane is a public way by operation of statute.[14]

---

in the 1918 layout validated the entire laying out. It specifically cites the language providing: "an entry for the purpose of constructing any part of the laying out, relocation or alteration shall be deemed a taking of possession of all the lands included in the laying out, relocation or alterations." St. 1917, c. 344, part 2, § 63. This argument ignores the fact that § 63 treats each laying out individually, and, as discussed above, Fishing Point Lane is a single lane, laid out over a single parcel. Moreover, the interpretation advanced by the town would essentially force it to pay damages for all ways set out in the 1918 layout upon the initiation of construction on a single public way. Such an interpretation, which would subject the town to significant liability, is unreasonable because it would nullify the two-year limitations period provided by § 63 for a municipality to determine whether it would take possession of a particular way and validate the laying out. We interpret the language relied upon by the town to mean that where a town begins construction on a way, the construction on any part of the way amounts to a taking of the whole way (regardless of the number of parcels it comprises), not all ways set out in the entire laying out. *Ibid.*

The town's reliance on *Curtis* v. *Boston*, 247 Mass. 417 (1924), is unavailing. In *Curtis*, the city was attempting to construct a single way across multiple, adjacent blocks. *Id.* at 421-422. Conversely, in this case, there is no evidence that the 1918 layout was for the purpose of laying out a single way over multiple contiguous parcels. Rather, it appears that Fishing Point Lane was a singular way leading from a main street (Ocean Avenue) to the ocean.

[13]The town's reliance on *Mahan* v. *Rockport*, 287 Mass. 34 (1934), is inapposite. In *Mahan*, the town of Rockport duly laid out and completed construction of a way, but did so in a manner that the "travelled part" of the way was not constructed to the full width of the way as it was laid out. *Id.* at 36-37. In 1932, approximately forty-three years after the laying out and construction, the plaintiff filed a petition to register her property, which the town of Rockport alleged encroached on the undeveloped portion of the way. *Id.* at 35-37. On appeal, the Supreme Judicial Court held that "[a] town way may be discontinued by vote of the town and not otherwise," that the unused portion of the way was therefore not abandoned, and that the plaintiff did not acquire title to the unused portion by adverse possession. *Id.* at 37-38. *Mahan* is therefore distinguishable because the town took possession of the way by construction on some portion of it, even if not to the extent of its full width.

[14]Moreover, absent a showing of any evidence that the town took possession of, or made efforts to maintain or repair the property, there is no reason to presume that it took possession of Fishing Point Lane in a manner compliant with St. 1917, c. 344, part 2, § 63. Cf. *Reed* v. *Mayo*, 220 Mass. 565, 568 (1915) (holding that laying out of way, combined with its construction, and town's use and occasional repairs of road for sixty years, supported presumption of compliance with statutory notice process and conclusion that it was public way); *W.D. Cowls, Inc.* v. *Woicekoski*, 7 Mass. App. Ct. 18, 20 (1979) (absence of maintenance and repairs, inter alia, supported conclusion that

The town also asserts that because the McLaughlins' predecessors in interest did not challenge the 1918 layout, the plaintiffs lack standing to contest the effect of the 1918 layout. However, as discussed above, the 1918 layout was voided as to Fishing Point Lane by the town's failure to take possession of the property within the requisite two-year period. It is the town that raises the question of the effect of the 1918 layout; the McLaughlins merely sought to register title to their land, which action they had undisputed standing to undertake. Furthermore, the town's argument that the McLaughlins are barred by the statute of limitations contained in St. 1917, c. 344, part 2, §§ 27 and 28, is misplaced.[15] In particular, the town points to the third clause of § 28, which provides that if before expiration of the year a suit is instituted wherein the "legal effect of the proceedings of the commissioners is drawn in question," the petition for assessment of damages may be filed within one year after the final determination of the suit. Even if § 28 can be construed to impose a one-year limitations period on challenges to the lawfulness of a laying out, that section concerns challenges to the "legal effect of the proceedings" and therefore cannot be applied to situations in which a laying out becomes void because

---

parcel was not public way).

[15]Section 27 provides:

> "A person aggrieved by the doings of the commissioners in the estimation of his damages, caused . . . by laying out . . . a highway, . . . may, upon petition in writing to the commissioners, agree with the parties adversely interested to have the matter determined by a committee . . . or he may apply by petition to the superior court for a jury . . . ."

Section 28 provides:

> "Such petition to the superior court for a jury may be made at any time before the expiration of one year, in the case of the taking of land, from the day when the highway is entered upon and possession taken for the purpose of constructing the same, in the case of specific repairs, from the day when the work is actually commenced on the way, and in all other cases, from the date of the order providing for the same; but if before the expiration of the year a suit is instituted wherein the legal effect of the proceedings of the commissioners is drawn in question, such application may be made within one year after the final determination of the suit."

of a public authority's failure to take possession.[16] The one-year limitations period provided for in § 28 cannot logically pertain to challenges raised under § 63, which provides that an owner must take possession of land in a laying out within two years after "the right to take such possession first accrues."

b. *Prescription.* The town asserts that the judge erred in finding that it failed to establish a prescriptive easement due to the absence of corporate action. The town argues that its acceptance of the 1918 layout, standing alone, is sufficient evidence to establish corporate action. The town further asserts it is entitled to a prescriptive easement based on the absence of tax assessments between 1918 and 1977, the record of discussions of the maintenance of Fishing Point Lane at public meetings, and the property's inclusion in a 1995 grant application by the town for a proposed upgrade of certain town properties. We disagree.

A prescriptive easement is established by showing the continuous, open, notorious, and adverse use of another's land, conducted under a claim of right, for a period of twenty years. *Daley* v. *Swampscott*, 11 Mass. App. Ct. 822, 827 (1981). In addition, where the entity asserting the right to a prescriptive easement is a town, corporate action is required. *Id.* at 827-828. See *Trenz* v. *Norwell, ante* 271, 278 n.7 (2007). There is sufficient corporate action when the municipality "has exercised dominion and control over the land in its corporate capacity through authorized acts of its employees, agents or representatives to conduct or maintain a public use thereon for the general benefit of its inhabitants." *Daley* v. *Swampscott, supra* at 829. The town bears the burden of proving a public way by prescription. See *Bullukian* v. *Franklin*, 248 Mass. 151, 155 (1924).

The town has failed to exercise the requisite corporate action during any twenty-year period. First, there is no evidence in the record that the town ever performed maintenance or work on

---

[16]As such, the town's reliance on *Whitehouse* v. *Sherborn*, 11 Mass. App. Ct. 668 (1981), is likewise misplaced. *Whitehouse* merely holds that the statute of limitations is essentially tolled when a taking is filed late, but once filed, a suit must be initiated within the statutory period. *Id.* at 675. Here, there was no taking and no assumption of possession, and therefore ownership reverted to Bridge. As Bridge or his heirs held title, there was no need to file suit.

Fishing Point Lane.[17] Second, the only evidence of the town's use of Fishing Point Lane is sporadic perambulations of ways on Marblehead Neck in 1962, 1973, 1989, 1992, and 1994. See note 8, *supra*. Even considering these perambulations in combination with the public's irregular use prior to 1994, there is insufficient evidence to support an inference of dominion and control over the property by the town. See *Daley* v. *Swampscott, supra* at 829. The only other factor favoring the town is the absence of tax assessments between 1918 and 1977 and again after 1996.[18]

Even if the absence of tax assessments could suffice to demonstrate the requisite dominion and control, the town has failed to demonstrate continuous open, notorious, and adverse use of the property for a period of twenty years. First, it cannot demonstrate any use of the property. It performed no construction, maintenance, or work on Fishing Point Lane during the requisite period. Similarly, its perambulations occurred so infrequently that they were insufficient to demonstrate regular use.[19] Furthermore, the only evidence in the record indicates that the public's use of Fishing Point Lane before 1994 was

[17]Congruent with this absence of corporate action is the evidence indicating that the title holders to Fishing Point Lane consistently used the property as if it belonged to them. Sometime between 1976 and 1986 the Brambles placed gravel on Fishing Point Lane and began using it as a driveway. There is no evidence in the record indicating that this use was discontinued or that the town ordered an end to such a use.

[18]The town also claims that its acceptance of the 1918 layout is sufficient in and of itself to demonstrate dominion and control. This is not persuasive. First, the town failed to take possession of Fishing Point Lane within two years, which allowed ownership of the property to revert back to the predecessor in interest. This failure was implicitly recognized when the town began negotiating with Mary Brackett in 1932 in response to her action to register certain of her properties, which it opposed. As part of the proposed settlement to Mary Brackett's legal action, the town voted to accept a deed from her for various properties, including Fishing Point Lane. See part 1.c., *supra*. Furthermore, the record indicates that Fishing Point Lane remained unchanged as late as 1938 and does not reflect any regular use by the town or public between 1938 and 1994.

[19]While the final three perambulations, in 1989, 1992, and 1994, occurred within a five-year period, the first few were more than ten years apart. Even if the final three are considered sufficient use, they do not constitute the necessary continuous use over a twenty-year period.

sporadic, not continuous over a twenty-year period.[20] See *Rivers* v. *Warwick*, 37 Mass. App. Ct. at 597 (sporadic use of discontinued roads, even for more than twenty years, was not continuous or necessarily adverse). See also *Gower* v. *Saugus*, 315 Mass. 677, 681-682 (1944) (use by police, fire, and town officials, combined with some evidence that road was used by private automobiles, was insufficient to make way public by prescription). Contrast *Glenn* v. *Poole*, 12 Mass. App. Ct. 292, 293-295 (1981) (frequent use of road for seven decades gave rise to presumption of easement). As such, the judge was correct in concluding that the town could not meet its burden of proof under *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

Second, even if the town could demonstrate use, there is a question as to whether the use was adverse. *Rivers* v. *Warwick*, *supra* at 597. Here, the documentation of the town's 1974 discussions with the McLaughlins' predecessors in interest, the Brambles, suggests that any town use may have been permissive, not adverse, as the Brambles volunteered to install steps at the end of the lane. Cf. *Spencer* v. *Rabidou*, 340 Mass. 91, 93 (1959) (evidence of permission rebuts presumption of adverse use).

Therefore, the judge was correct in concluding that a prescriptive easement did not exist. The town failed to demonstrate the requisite corporate action and failed to demonstrate open, notorious, and adverse use for a continuous period of twenty years.[21]

To be sure, the importance of public access is not to be

---

[20]Although the public use increased after the town posted a sign in 1994 and subsequently began listing Fishing Point Lane as a public way in certain town publications, this use was not continuous for a twenty-year period. Oliphant stated in her affidavit that she only observed a few dozen people using Fishing Point Lane to access the waterfront over a thirteen-year period between 1973 and 1986. Similarly, Klaus Stelzer stated that over an eight-year period between 1986 and 1994, he observed persons using Fishing Point Lane on an "infrequent" basis. Beyond the citations to the town perambulations, the town meeting reports, and the disputed evidence of the laying out, the town has offered no evidence to counter these assertions, and therefore cannot meet its burden of showing continuous use for a twenty-year period. *Foley* v. *McGonigle*, 3 Mass. App. Ct. 746, 746 (1975).

[21]Largely repackaging the arguments it makes for prescriptive rights, the town contends that "the plaintiffs are estopped from challenging the layout by their own knowledge and by the conduct, the admissions, and the laches of

minimized. Indeed, the town has represented that there are a number of public ways on Marblehead Neck. However, on the record presented to us here, by its failure to take possession of Fishing Point Lane as required by statute within two years of the 1918 layout, and by its failure to establish the existence of a prescriptive easement, the town has not shown that Fishing Point Lane is subject to the rights of the public.

*Judgment affirmed.*

their predecessors with respect to the 1918 layout." This claim is not persuasive. There is no evidence that the McLaughlins or their predecessors in interest made any representations or engaged in other conduct that was intended to induce the town not to take possession of Fishing Point Lane. Nor is there evidence that the town relied to its detriment on any such representations or conduct.