ROBERT A. RIVERS & another[1] vs. TOWN OF WARWICK
& another.[2]

No. 92-P-1538.

Franklin. December 20, 1993. - November 8, 1994.

Present: ARMSTRONG, SMITH, & PORADA, JJ.

*Way*, Public: subdivision control, discontinuance, establishment, what constitutes. *Evidence*, Jury view. *View*.

At the trial of a civil action to recover damages under G. L. c. 79, § 10, and G. L. c. 82, § 24, for the action of a town in discontinuing two roads and part of a third, the plaintiffs did not carry their burden of proving that the roads in question were public ways. [594-598]

CIVIL ACTION commenced in the Superior Court Department on March 16, 1989.

The case was tried before *Vieri Guy Volterra*, J.

*Raymond R. Randall* (*Leslie F. Black* with him) for the defendants.

*John G. Tardif* for the plaintiffs.

ARMSTRONG, J. The plaintiffs, owners of a summer house and four parcels of land in Warwick, brought this action to recover damages under G. L. c. 79, § 10, and c. 82, § 24, for the action of the town, in town meeting, in discontinuing two roads (Page Road and Flagg Road) and part of a third (Wilson Road). See *Mahan v. Rockport*, 287 Mass. 34, 37 (1934). The case was tried on the plaintiffs' theory that these were all town ways, or public ways of which the town had the duty of maintenance, and that two, at least, of their parcels, parcel A, the house lot of thirty-six acres with frontage

---

[1]Priscilla B. Rivers.

[2]The board of selectmen of Warwick. Two of the selectmen were also sued for damages as individuals, but a partial summary judgment was entered in their favor without opposition.

on Wilson Road and Page Road, and parcel B, a wood lot of 140 acres with frontage on Flagg Road and Page Road, had been reduced in value (for building lots) by, according to one expert opinion, $66,000 and $71,000, respectively. The town denied that the roads were public ways. A jury returned special verdicts, finding that Page Road was not a town road but that Flagg Road and Wilson Road were, and they awarded damages of $18,500 and $17,000, respectively. The town appeals.

The discontinuances had their origin in a 1987 town meeting vote instructing the planning board to prepare an official town map under G. L. c. 41, § 81E, showing a definitive depiction of the town's roads and their status. The board, without funding to research the historical records of the many earth and ledge ways that meandered through the woods of this rather isolated, rural community (population 600), proposed instead, at the 1988 town meeting, two articles, one of which would discontinue all ways not shown on the street list, and the second, predicated on adoption of the first, would discontinue, on a street-by-street basis, certain ways or parts of ways shown on the street list. Both articles passed. Wilson Road was on the street list. By virtue of the second article Wilson Road was to be maintained to give the plaintiffs access to their summer house from the town center, but it was discontinued beyond their driveway. The record does not show whether Flagg Road and Page Road were on the street list, but it is agreed that the town meeting voted their discontinuance.

The plaintiffs had the burden of proving the ways to be public.[3] *Schulze* v. *Huntington*, 24 Mass. App. Ct. 416, 417 (1987). A way is not public unless it has become such "in one of three ways: (1) a laying out by public authority in the manner prescribed by statute . . . ; (2) prescription; [or] (3)

---

[3]General Laws c. 82, § 24, also provides for damages for discontinuance of so-called "statutory private ways," i.e., private ways laid out by the selectmen as to which the town has no duty of upkeep, see *United States* v. *125.07 Acres of Land*, 707 F.2d 11, 14 (1st Cir. 1983); here, however, the plaintiffs expressly disavowed at trial any claim to recover on that basis.

prior to 1846, a dedication by the owner . . . coupled with
. . . acceptance by the public." *Fenn* v. *Middleborough*, 7
Mass. App. Ct. 80, 83-84 (1979). There was no evidence
here of dedication. The plaintiffs claim to have met their
burden by five types of evidence: (1) negative inference from
the vote of discontinuance itself; (2) a reference in the deed
of parcel B to Flagg Road as "a town road"; (3) mainte-
nance of the roads by the town over the years the plaintiffs
used their summer home (1948 to the present); (4) prescrip-
tion, i.e., use by the public, adverse, open, and uninterrupted,
for the same period; and (5) the jury's view. We discuss each
of these in turn.

1. *The vote of discontinuance.* In *Witteveld* v. *Haverhill*,
12 Mass. App. Ct. 876, 877 (1981), we said: "While the dis-
continuance in 1895 of a portion of Old Road by Haverhill
permitted the inference that Old Road was a public way, it
did not compel that inference. As the judge said, the discon-
tinuance may have signified no more than an abundance of
caution against the possibility that a public way did exist."
The inference may have been permissible on the facts of that
case. It makes no sense in the circumstances of this case,
where it is clear that the vote of discontinuance applied to
large numbers of roads and was intended to resolve the un-
certainty as to the legal status of these roads by discontinu-
ing any that might be public ways.

2. *The deed reference to "town road."* Parcel B, the 140-
acre wood lot conveyed by the town to the plaintiffs in 1946,[4]
is described in the deed by metes and bounds. Flagg Road
runs through the parcel, and, at a point in the description
where the northerly boundary crosses Flagg Road, the deed
states: "thence easterly bounded by the said Orcutt place to
and across a town road to a stake and stones on the north-
west corner of Amasa D. Kimball's land . . . ." From at
least the Province Laws of 1693-1694, c. 6, § 3, "town
ways" or "town roads" have carried the connotation of public
ways laid out and usually paid for by the town. *United States*

---

[4] Apparently for two dollars per acre, although the judge did not allow
the town to put that in evidence.

v. *125.04 Acres of Land*, 707 F.2d 11, 14 (1st Cir. 1983). See *Newburyport Redev. Authy.* v. *Commonwealth*, 9 Mass. App. Ct. 206, 223 (1980) (dating the term back to 1639). Our cases have expressed some doubt whether the use of such terms as "town road" in old deeds suffices by itself to establish a laying out. *W.D. Cowls, Inc.* v. *Woicekoski*, 7 Mass. App. Ct. 18, 20 (1979). The metes and bounds description in the 1946 deed was shown to have been used in an 1865 deed of the same 140-acre parcel. For purposes of decision we can assume Flagg Road was public at that time. Records of Warwick town meetings, read in connection with an 1830 map and the reference points in the 1865 deed description, showed that Flagg Road south to the "Leonard Farm" was discontinued in 1870 and that the balance of Flagg Road and Page Road were discontinued in 1900.[5] The interpretation of the documents was in this case a matter of law for the court. See *Foster From Gloucester, Inc.* v. *City Council of Gloucester*, 10 Mass. App. Ct. 284, 285 (1980).

Against that documentary evidence, which fully explained the deed's use of the term "town road," an inference therefrom that Flagg Road was a public way in 1988 was untenable.

3. *Town maintenance of the roads.* There was rough agreement in the testimony of the plaintiff Robert A. Rivers and that of Kenneth Alden, who had done road maintenance for the town's highway department for twenty-eight years, that the town had occasionally plowed Wilson Road and Flagg Road in the winter for the use of lumberers; that the roads were otherwise generally not plowed; that Wilson Road was plowed up to the plaintiffs' driveway at their request on any occasion — Thanksgiving or occasionally Christmas — that they might wish to open the house in the winter (they would telephone the highway department before coming), but was otherwise left unplowed; that the town repaired por-

---

[5] The 1865 deed, the town meeting records, and the 1830 map were all regrettably omitted from the appendix. They were all read, however, in the testimony so as to make their relevant content clear in the record on appeal.

tions of those roads after major washouts; and that the town occasionally constructed culverts under these roads to divert water from washing out town roads below. In the summer, after "mud season," when the roads were impassable even by town vehicles, the town would occasionally do rough grading. This evidence did not justify a finding that the roads were public. Compare *Teague* v. *Boston*, 278 Mass. 305, 308 (1932); *Fenn* v. *Middleborough*, 7 Mass. App. Ct. at 85-86. Indeed, towns that have accepted the provisions of G. L. c. 40, § 6C,[6] are expressly authorized to do snow removal on private ways open to the public, and more extensive upkeep of private ways can be found to be expenditures for a public purpose if done for the benefit of the public. See *Opinion of the Justices*, 313 Mass. 779, 783-785 (1943).

4. *Prescription.* The evidence in this case made out, at best, sporadic use of the discontinued roads by the public for recreational purposes. The plaintiff Robert Rivers testified to occasional lumbering operations, frequent use by hunters, nature viewers, skiers, relatives visiting the Riverses' house (presumably over the portion of Wilson Road not discontinued), and occasional cars traveling into the woods. "That there was continued use by the public for more than twenty years does not in itself raise a presumption that such use was adverse." *Boxborough* v. *Joatham Spring Realty Trust*, 356 Mass. 487, 490 (1969) (very similar evidence of public use of dirt roads in the woods). Compare *W.D. Cowls, Inc.* v. *Woicekoski*, 7 Mass. App. Ct. at 20; *Newburyport Redev. Authy.* v. *Commonwealth*, 9 Mass. App. Ct. at 221-222, 227. The plaintiff Robert Rivers's testimony that "practically everybody" used the roads did not suggest continuous traffic and was immediately qualified by words suggesting recreational use of an occasional nature.

5. *The jury's view.* It is said in the cases that a "view is not technically evidence," *Berlandi* v. *Commonwealth*, 314 Mass. 424, 451 (1943), but that information properly acquired on a view "may properly be treated as evidence

---

[6]There was no evidence whether the town had accepted § 6C, but this probably tends against the party having the burden of proof.

. . . ." *Ibid.*, quoting from *Keeney* v. *Ciborowski*, 304 Mass. 371, 372 (1939). *Murphy* v. *Boston & Me. R.R.*, 319 Mass. 413, 420-421 (1946), suggests that a view may be treated as evidence if a view might shed light on the issue of fact to be decided. In the case of dirt roads running through woods, acknowledged by all to be in existence and used freely, if occasionally, by members of the public, we do not see how a view could assist the jury in determining whether the roads were public or private. In a record otherwise without probative evidence that the roads were public ways, we decline to give dispositive effect to the fact that the jury took a view. Such a view was doubtless helpful to the jury in understanding the testimony and documentary evidence concerning the configuration and relation of the various roads and parcels of land. It cannot be given greater significance on appeal.

In sum, we are of the opinion that there was no evidence that justified sending to the jury the question whether the discontinued ways were public ways. It follows that the judgment must be vacated and a new judgment entered for the defendants.

*So ordered.*