E. DAVID NYLANDER & others[1] *vs*. BARBARA POTTER
& another.[2]

No. 93-P-971.

Franklin. May 16, 1994. - May 26, 1995.

Present: SMITH, PORADA, & LAURENCE, JJ.

Further appellate review granted, 420 Mass. 1107 (1995).

*Way*, Public: discontinuance. *Easement*. *Real Property*, Easement, Poles
and wires.

In a civil action, a Superior Court judge correctly ruled that an abutter to
a public way, when the public way was discontinued, retained a private
easement of travel affording access to her property. [608-610]
An owner of property with an undeeded private easement of travel over a
discontinued public way had no right under G. L. c. 187, § 5, to install
a utility pole on the way. [610]

CIVIL ACTION commenced in the Superior Court Department on September 19, 1989.

The case was heard by *John F. Murphy, Jr.*, J.

*Wendy Sibbison* for the plaintiffs.

*Raymond R. Randall* for the defendants.

SMITH, J. This is an appeal by the plaintiffs, E. David Nylander, J. Lance Nylander, and Janet Nylander, from that portion of a judgment entered in the Superior Court declaring that the defendant Barbara Potter and other abutters have a right to use Bachellor Road, a former town road, for access to their property, including a portion of the road which runs through Nylanders' property. Potter has filed a cross appeal to that portion of the judgment which enjoins her from placing utility poles on the road.

[1] J. Lance Nylander and Janet Nylander.
[2] Russell Fellows, also known as Arthur Fellows, a friend of Barbara Potter, is also a defendant in this case. He does not own any of the land involved, so we refer to the defendant in the singular, namely Potter.

In September, 1989, the Nylanders filed a complaint (later an amended complaint) in the Superior Court in Franklin County seeking (1) to enjoin Potter from trespassing on that part of Bachellor Road which runs through the Nylanders' property and (2) to order Potter to remove a utility pole which Potter caused to be placed on Bachellor Road and enjoin her from placing any further utility lines and poles on the Nylanders' property.

Potter filed an answer to the Nylanders' complaint and in a counterclaim sought (1) a declaratory judgment that she has the right to use the Nylanders' portion of Bachellor Road for ingress and egress and to place utility poles on the Nylanders' property and (2) damages.

The matter was heard by a judge, sitting without jury. After the trial, the judge filed a memorandum of decision that contained his findings of fact, rulings of law, and order for judgment. We summarize the facts found by the judge.

The Nylanders and Potter own land which abuts both the easterly and westerly sides of Bachellor Road in the town of Warwick (town). In March, 1879, the town voted to discontinue Bachellor Road as a town road.[3]

Bachellor Road runs approximately north and south from a point on the easterly line of Hastings Heights Road to a point on the southerly line of the Athol Road in the town. Its present condition is unimproved, rutted, and overgrown, with rocks and outcroppings that make it almost impossible for vehicle travel at some locations.

Bachellor Road existed where it is at present in November, 1793, when Joshua Dean granted the property, formerly known as "Bachellor Farm" (now Potter), to Samuel Fay. The road has been variously described in deeds in the Potter chain of title as "an ancient road known as Bachellor Road," as a "town road" and as a lane and bridle road. The "Bach-

---

[3]In May, 1988, the town voted to discontinue all public roads in the town, except those on an attached list of public ways. Bachellor Road was not on the list of roads retained as public roads. See *Rivers* v. *Warwick*, 37 Mass. App. Ct. 593, 594 (1994).

ellor Road" has been described by that term in deeds in the Nylander chain of title as far back as April 1, 1837.

The Nylanders' property abuts both sides of Bachellor Road for approximately 100 feet as the road runs off Hastings Heights Road. The next approximately 788 feet is bounded by the Nylanders' property on the west and Potter's land on the east.[4] The Potter land continues as the easterly boundary of the road to Athol Road. The remainder of the westerly boundary of the road includes various owners, Potter among them, before reaching Athol Road.[5]

In July of 1988, Potter obtained a building permit to construct a house on her property. She also requested a permit from the board of selectmen of Warwick to place two utility poles on Bachellor Road to provide her new home with electric and telephone service. She was granted the permit, and two poles were put in place, one of which is located within the 100 foot section of Bachellor Road which is abutted on both sides by the Nylanders' property.

A friend of Potter, one Fellows (see note 2, *supra*), began aiding Potter in the construction of her house. Both Potter and Fellows entered Potter's property by passing over the contested 100-foot strip. Trucks engaged in the construction of Potter's house passed over the same portion of Bachellor Road. As a result, the Nylanders put up snow fences blocking the road and posted no trespassing signs. The fences were removed by Fellows, and this action followed.

---

[4]In their brief, the Nylanders state that there are two disputed stretches of Bachellor Road — the first 100 feet and the western half of the next 788 feet. However, at the trial, the Nylanders referred only to the 100-foot portion as the disputed stretch. For simplicity's sake, we refer to the first 100 feet as the disputed stretch. Our decision, of course, encompasses the next 788 feet.

[5]The Nylanders acquired their title to the property east of Bachellor Road by inheritance from their father. They acquired an additional eight-acre parcel to the west of the road by direct conveyance in 1982. Potter acquired her title to the parcels lying east and west of the road by direct conveyance in 1987.

An examination of the titles shows that the Nylanders' property and the Potter property were never merged and have always been separate and distinct parcels.

Based on his findings, the judge ruled that once Bachellor Road was discontinued as a town road, title to the roadbed passed to the landowners abutting the road. Therefore, the Nylanders are the owners of the disputed stretch. The judge further ruled, however, that when Bachellor Road was discontinued it became a "public access" private way which gave Potter the right to use the road for purposes of ingress and egress to and from her property. The judge characterized Potter's right to use Bachellor Road as an easement to travel. The easement, however, did not include the installation of utility poles in the disputed stretch. Neither side was awarded damages.

On appeal, the Nylanders argue, among other things, that discontinuance of a public way does not create a "public access" private way. We do not reach that argument because we hold that, in the circumstances present here, the judge properly ruled that Potter had an easement of travel over Bachellor Road because she was an abutter.

We start our analysis by noting that Bachellor Road was a public way when it was discontinued by the town.[6] Abutters to a public way "ordinarily hold the title to the fee to the center of the public way, subject only to the easement of travellers to pass and repass." *Opinion of the Justices*, 297 Mass. 559, 562 (1937). See also *Perley* v. *Chandler*, 6 Mass. 454, 456 (1810) ("By the location of a way over the land of any person, the public have acquired an easement . . . "). Once the public road is discontinued, however, the public easement to travel over the road is terminated and the abutter "hold[s] the land free from the [public easement]." *Perley* v. *Chandler, supra.* Here, because the Nylanders' predecessors in title owned land on both sides of the disputed stretch, the Nylanders own the entire roadbed.

---

[6] It is clear from the town records that Bachellor Road was laid out as a town road in 1839. "From at least the Province Laws of 1693-1694, c. 6, § 3, 'town ways' or 'town roads' have carried the connotation of public ways laid out and usually paid for by the town." *Rivers* v. *Warwick*, 37 Mass. App. Ct. at 595-596. The reference in the town records establishes that Bachellor Road was a town road open to the public at the time it was discontinued in 1879.

Our inquiry, however, does not end here. Abutting owners to a public way share with all other citizens an easement of travel over the public way. See 39A C.J.S. Highways § 141 (1976). However, in addition to their public easement of travel, abutters by virtue of their ownership of property that abuts a public way have a private easement of travel in order to have access to their property. "Access to a public way is one of the incidents of ownership of land bounding thereon, and this right is appurtenant to the land . . . ." *Wenton* v. *Commonwealth*, 335 Mass. 78, 80 (1956), quoting from *Anzalone* v. *Metropolitan Dist. Commn.*, 257 Mass. 32, 36 (1926). See also *MacLean* v. *Parkwood, Inc.*, 354 F.2d 770, 773 (1st Cir. 1966) (an easement of access is the right which an abutting owner has of ingress and egress to his property).

Although discontinuance of a public way terminates the public easement of travel, we hold that the discontinuance does not terminate the private easement of travel which abutters enjoy. We conclude that when the town discontinued Bachellor Road as a town road, the abutters retained their private easement of travel over the road to and from their property.[7] Therefore, the judge properly concluded that the Nylanders could not bar Potter or other abutters from using Bachellor Road to gain access to their property.[8] We

---

[7]Potter tried the case on the theory that she had an easement by prescription. She introduced evidence that, for many years, members of the public used Bachellor Road. There was evidence introduced by the Nylanders that the public used the road only after obtaining permission from the Nylanders.

The judge rejected Potter's theory and held that Potter had an easement to travel on the road which she obtained as an abutter and not by prescription.

[8]We note that the majority of courts that have considered the issue have concluded that, although title to a discontinued public roadway may be vested in one abutter, it is subject to the rights of other owners of abutting land to have access to their property. See *Sevener* v. *Faulkner*, 253 Ark. 649, 650 (1972); *Mosteller* v. *Southern Ry. Co.*, 220 N.C. 275 (1941); *Knierim* v. *Leatherwood*, 542 S.W.2d 806, 810 (Tenn. 1976); *Spradley* v. *Hall*, 57 S.W.2d 182 (Tex. Civ. App. 1933). Also see Annot., Private Easement in the Way Vacated, Abandoned, or Closed by Public, 150 A.L.R. 644 (1944); 39 Am. Jur. 2d *Highway, Street & Bridges* § 185 (1968).

are aware that Potter was the only party named in Nylanders' complaint. We think that it was sound judicial economy for the judge to include the other abutters in his order for judgment.

Under G. L. c. 187, § 5, an owner of property who has a *deeded* easement over a private way, has the right to install gas and sewer lines and telephone and electric service "on, along, under and upon" the easement. *Barlow* v. *Chongris & Sons, ante* 297 (1995). The statute, however, does not extend to unrecorded property rights. See *Cumbie* v. *Goldsmith*, 387 Mass. 409, 411-412 n.7 (1982). Accordingly, the defendant Potter may not install utility poles in the disputed stretch of Bachellor Road.

*Judgment affirmed.*