APPEALS COURT 
 
 TOWN OF CONCORD vs. NEIL E. RASMUSSEN & others.[1]

 
 Docket:
 23-P-310
 
 
 Dates:
 March 1, 2024 – October 21, 2024
 
 
 Present:
 Blake, Englander, & D'Angelo, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Way, Public: what constitutes, discontinuance, establishment; Private. Contract, Construction of contract. County, Commissioners.
 
 

  
      Civil action commenced in the Land Court Department on October 24, 2017.
      The case was heard by Howard P. Speicher, J.
      Gwen Nolan King (Diane C. Tillotson & Dylan S. O'Sullivan also present) for the defendants.
      Austin Paganelli Anderson (Melissa C. Allison also present) for the plaintiff.
      Christine P. O'Connor, Town Counsel, for town of North Andover & another, amici curiae, submitted a brief.  
      D'ANGELO, J.  This appeal pertains to a documented way in the town of Concord known as Estabrook Road.  Estabrook Road runs south from the Carlisle-Concord border to just about the center of Concord.  Contemporaneous documents and writings -- including some by Henry David Thoreau and by Ralph Waldo Emerson's daughter -- show that beginning as early as the 1700s and extending through the early 1900s, the road was used for travel between what is now the town of Carlisle and Concord Center.
      At issue is whether two northern sections of Estabrook Road (the disputed sections) are a public way.  The plaintiff, the town of Concord (town or Concord), claims that the disputed sections are parts of a public way and seeks a declaration to that effect.  The defendants, abutters to the disputed sections of the road (abutters or defendants), claim that the disputed sections are not a public way and in 2020 they erected barriers and signs to prevent public access.  After six days of trial and two views, the Land Court judge held, in a well-reasoned decision, that Estabrook Road is a public way, and that it remains open to public use despite a 1932 "discontinuance" by the Middlesex county commissioners (county commissioners) pursuant to G. L. c. 82, § 32, as then in effect.  The judge enjoined the abutters from blocking access to the disputed sections of the road.  The abutters appeal.
      The case presents three principal issues that we address below:  (1) was the most northern section of Estabrook Road, which begins at the Carlisle border and was laid out by the Middlesex County Court of General Sessions of the Peace in 1763 (the northern disputed section), a public way; (2) was the section south of the northern disputed section -- beginning at the end of the northern disputed section and extending southerly to a gate (the southern disputed section) -- which the town contends was already a public way prior to 1763, a public way; and (3) were the public's rights to access to the disputed sections of the way terminated, at the request of the abutters, by action of the county commissioners in 1932, pursuant to G. L. c. 82, § 32, as then in effect.  For the reasons that follow, with certain modifications, we affirm the judgment of the Land Court judge.[2]  
      1.  Background.  We draw the facts from the judge's findings and the statement of agreed facts contained in the parties' joint pretrial conference memorandum.  We uphold the Land Court judge's findings of fact "unless they are clearly erroneous."  Witteveld v. Haverhill, 12 Mass. App. Ct. 876, 876 (1981).  We reserve discussion of some facts for our analysis of the issues.  
      a.  Layout of Estabrook Road.  Estabrook Road runs southerly from the Concord-Carlisle line through "Estabrook Woods," comprised of over 1,400 acres of contiguous properties in the towns of Concord and Carlisle; the town of Concord owns 115 acres of woodland, and the rest is privately owned.  The disputed sections are unpaved and are bounded on one or both sides by stone walls roughly thirty feet apart.
      For purposes of this litigation we consider Estabrook Road in three sections.  As indicated, the northern disputed section was laid out in 1763 by the Middlesex County Court of General Sessions of the Peace.  It begins at the town line with Carlisle and terminates adjacent to "Mink Pond" or "Oak Meadow."  Relevant here, the description in the 1763 layout states that it ends (southerly) at a "Town Way thro' Said David Brown's Land."  A condition of the approved layout was that the "petitioners" (abutters to the road at the time) give their land for the road.
      The southern disputed section runs from the southern terminus of the 1763 layout and ends at a gate.  Past the gate, the remainder of Estabrook Road (heading south into Concord Center) is considered a public way and is not in dispute (the undisputed section).  As to the southern disputed section, the parties agree that there is no known record of a layout of this disputed section of the road, and the judge did not find the evidence sufficient to conclude that the southern disputed section was laid out by the proprietors.[3]  However, the judge did find that "[f]rom the reference in the 1763 Layout to its connection to a 'Town Way' and from references in deeds and probate documents to its existence[,] . . . there had been a layout as a way of the portions of Estabrook Road south of the 1763 Layout."  The judge further concluded that the actual records of the layout had "been lost to time," and credited testimony of the town clerk that records of the "North Quarter," likely including the layout of Estabrook Road, south of the 1763 layout, "once existed but [are] no longer in the town's possession."
      b.  Use of and references to Estabrook Road.  The judge heard considerable evidence regarding the historic uses of the road, and we include a summary here primarily to provide context.  The judge credited evidence that between 1745 and 1810, both the Kibby family, owners of property near the Carlisle line, and another family owning property just south of the Kibby family likely used the disputed sections of Estabrook Road to go to Concord Center.  The judge concluded that "[b]ased on . . . large families living north and south of the eventual Concord-Carlisle boundary, [he] . . . credit[ed] that Estabrook Road was used by others to travel from the north part of Concord (which became Carlisle in 1780) to Concord center, south of the disputed portions of Estabrook Road, from the mid-18th century to the early 19th century."  
      Henry David Thoreau also wrote about Estabrook Road in his journals in the 1850s and described his interactions with individuals he met on or near the road.  The town's expert historical archaeologist relied on those writings to conclude that Estabrook Road was used for such things as travel, berrying, collecting nuts, and logging.  The daughter of Ralph Waldo Emerson described a carriage ride along Estabrook Road in 1866 and a picnic she shared with others in the area in October 1886.  A 1897 Massachusetts travel guide stated that the drive through Estabrook Road "through the woods" and by the lime quarry, was a "favorite summer" drive. 
      The judge noted an 1877 town road commission report that stated, "The Easterbrook Road, that had been badly cut up by teaming wood over in the spring, was repaired and graded to the town line."  From that entry, the judge found that "Estabrook Road was being actively used for logging, and that the town understood it to be an obligation of the town to keep the road in repair."  The record reveals that the town spent sums intermittently to maintain and repair Estabrook Road.  In 1888, the road commissioners ordered road signs to be placed on Estabrook Road.  In October 1899, the selectmen voted to allow telephone lines to be installed along the full length of Estabrook Road.  By 1890, however, the road commissioners' report stated that certain "wood roads," including Estabrook Road, were seldom used for public travel -- except for cutting brush -- and cost more to maintain than was justified by the use.  While the evidence showed that the town continued to make occasional repairs, the records do not reveal the location of the repairs, and it is unclear how much of the disputed sections were repaired.  The judge inferred that "at least some of these funds, and likely most of them, given the length of the disputed portion of the road, were expended on the disputed portions of the Estabrook Road" where logging and brush cutting occurred.  
      c.  Adjudicated private way.  On April 13, 1932, an attorney representing landowners abutting the northern disputed section of Estabrook Road asked the road commissioners to close the road from the Carlisle line to Raymond Emerson's driveway (roughly equivalent to the gate at the southern end of the southern disputed section) as a public way.[4]  The road commissioners granted the request and signed a petition and submitted it to the county commissioners.  Apparently following the requirements of G. L. c. 82, § 32A, as then in effect, see St. 1924, c. 289, the petition stated that the sections of Estabrook Road at issue were a "public way, and that common convenience and necessity no longer require that such way shall be maintained in a condition reasonably safe and convenient for travel"; that the way "has for a long period ceased to be in general public use; that there are no residences served by that portion of said way sought to be discontinued as a public way; and that it would be an inordinate and unreasonable expense upon the said Town of Concord to keep said way in a condition reasonably safe and convenient for travel."  The road commissioners requested that the county commissioners 
"adjudicate that said way shall hereafter be a private way, and that the Town of Concord shall no longer be bound to keep the same in repair, upon condition that the said Town give sufficient notice to warn the public against entering thereon by the posting of adequate notice or notices where such way enters upon or unites with an existing public way." 
      The county commissioners thereafter found that "common convenience and necessity no longer require[d] such way to be maintained in a condition reasonably safe and convenient for travel, and adjudicate[d] that said way shall hereafter be a private way."  The county commissioners ordered that "in accordance with Chapter 289 of the Acts of 1924 this junction shall take effect provided that sufficient notices to warn the public against entering on said way are posted where said road enters upon or unites with the existing public way" and at "the town line between Carlisle and Concord."  The language regarding warning the public not to enter the disputed sections of the road is largely consistent with G. L. c. 82, § 32A, as then in effect.  See St. 1924, c. 289.
      2.  Discussion.  The defendant abutters make three primary arguments:  (1) that the northern disputed section was not a public way before 1932; (2) that the southern disputed section was not a public way before 1932; and (3) that even if the disputed sections were previously public ways, the public's rights were terminated by the actions of the county commissioners in 1932, pursuant to G. L. c. 82, § 32A, as then in effect.
      a.  Estabrook Road's status as a public way before 1932.  "Once duly laid out, a public way continues to be such until legally discontinued."  Erickson v. Clancy Realty Trust, 88 Mass. App. Ct. 809, 811 (2016), quoting Carmel v. Baillargeon, 21 Mass. App. Ct. 426, 428 (1986).  See Preston v. Newton, 213 Mass. 483, 485 (1913).  However, "[i]f a road has never been dedicated and accepted, laid out by public authority, or established by prescription," and is "wholly the subject of private ownership," but is open to public use, "such use may be terminated at any time by the will of the owner" (quotation and citation omitted).  W.D. Cowls, Inc. v. Woicekoski, 7 Mass. App. Ct. 18, 19-20 (1979).  Accordingly, the first questions we consider are whether the two disputed sections were public ways (or statutory private ways open to the public), or rather were "the subject of private ownership" of the abutters to the way.  The defendants argue that there are only three ways to establish a public way in Massachusetts:  (1) a statutory layout; (2) a pre-1846 dedication and acceptance; or (3) prescriptive use.  They further argue that the town failed to offer sufficient proof on any of those three methods.  See Martin v. Building Inspector of Freetown, 38 Mass. App. Ct. 509, 510 (1995).  They argue that the judge erroneously "established . . . a fourth means" based on "circumstantial evidence" of one of those methods.  It has long been the case, however, that the question "whether [a road] was or ever had been a public way . . . is ordinarily for the trier of fact to decide upon the evidence."  W.D. Cowls, Inc., supra at 19.  See Clark v. Hull, 184 Mass. 164, 166 (1903).  
      In Fenn v. Middleborough, 7 Mass. App. Ct. 80, 86 (1979), we recognized that it may be possible to show "on the basis of a factual inference from the evidence taken as a whole that the ways in question were laid out at some anterior time and that the record thereof has been lost."  Contrary to the defendants' assertions, therefore, it is not improper to consider circumstantial evidence in making the determination whether a way was ever public.  "When the fact of a public way is disputed, the burden of proof falls on the party asserting the fact," and thus the town bore the burden of proof here.  Witteveld, 12 Mass. App. Ct. at 877.  
      b.  The northern disputed section.  As to the northern disputed section, there is no dispute that the road on the ground is consistent with the 1763 layout.  Rather, the defendants contend that the 1763 layout was ineffective to render that section a public way because the condition precedent to the layout -- that the petitioners give their land for the road -- was not met.  They assert that "[i]t is not enough that a layout exists[;] the conditions to the lawful appropriation of private property for public use must have been met for [the layout] to be effectuated."  
      Here, however, the judge credited circumstantial evidence confirming that the owners of the land used for the 1763 layout did give their land for the road.  That circumstantial evidence took several forms.  The judge found that at least some of those who petitioned the county commissioners to lay out the road were owners of the land to be used.  Two years after the layout, the town paid John Brown, an abutter, for building stone walls on "the new Road in the north part of the Town" -- which would not have been necessary had Brown not donated his land for the road.  Shortly after the layout, in 1764, the town assigned a highway surveyor to inspect and maintain "the new way Lately Laid out and the new way as far as the way goes though Capt. Jonathan Buttrick's pasture and northward."  In the ensuing years some of the abutters transferred their properties, describing those properties as bound "on a County Road" or "on Road lately laid out by the County," or "on the county roade as the wall now stands."  Indeed, one of the abutters later sought to get his land back, and in doing so admitted that he had given the land for the road.  
      Additionally, the documents surrounding the 1932 actions of the town and the county commissioners identify Estabrook Road, including the 1763 layout, as a public way.  We are aware that a discontinuance vote permits, but does not compel, an inference that the way was public.  Witteveld, 12 Mass. App. Ct. at 877.  This is because "the discontinuance may have signified no more than an abundance of caution against the possibility that a public way did exist."  Id.  Here, however, the discontinuance documents repeatedly identify Estabrook Road as a public way -- there is no equivocation about it.  The abutters' attorney in his representations to the town commissioners, the town commissioners in their petition to the county commissioners, and the county commissioners all identified it as a public way.  In conjunction with the forgoing circumstantial evidence credited by the judge, see Sturdy v. Planning Bd. of Hingham, 32 Mass. App. Ct. 72, 75 (1992) (judge could rely on additional confirmation of public character of road in subsequent records of town), we are not persuaded in these circumstances that all of these actors were simply exercising an "abundance of caution against the possibility that a public way did exist."  Witteveld, supra.  Rather, we perceive no error in the judge's conclusions that the northern disputed section of the way was laid out by the county, and that the condition precedent was met that the abutters gave their land for the way.
      c.  The southern disputed section.  We conclude for many of the same reasons that despite the absence of records laying out the southern disputed section, the judge did not err in concluding that it, too, had been laid out by the town for public use.  The 1763 layout states that it terminates to the south at a "town way."  "From at least the Province Laws of 1693-1694, c. 6, § 3, 'town ways' or 'town roads' have carried the connotation of public ways laid out and usually paid for by the town."  Rivers v. Warwick, 37 Mass. App. Ct. 593, 595 (1994).  The judge credited the town clerk's testimony that the town's "North Quarter" book was no longer in the town's possession and concluded that the layout of ways, including Estabrook Road south of the 1763 layout, likely were in it. 
      Although "[o]ur cases have expressed some doubt whether the use of such terms as 'town road' in old deeds suffices by itself to establish a laying out," Rivers, 37 Mass. App. Ct. at 596, we do not rely solely on those references.  Here again, the 1932 adjudication documents identified all of Estabrook Road as public, and the 1932 vote to "discontinue" the disputed sections permits the inference that those sections had been public.  See id.  Moreover, other town documents reflect the town's understanding that it had an obligation to maintain the way.  The town had maintained the disputed sections for many years, and in the last decade of the 1800s, the town began to express frustration with its financial obligation to maintain those areas.  Had the town understood that Estabrook Road was not a public way, it would not have had a duty to continue maintaining it.  Additionally, the judge credited testimony of the town clerk that the layout likely was in the North Quarter book that had been misplaced and that the town maintained Estabrook Road periodically for many years.  There was no error in the judge's conclusion that the southern disputed section had been a way open to the public before 1932.
      d.  1932 adjudication.  The next question concerns the effect of the 1932 adjudication by the county commissioners.  The parties agree that the county commissioners acted pursuant to G. L. c. 82, § 32A, as then in effect.  See St. 1924, c. 289.  Entitled "An Act Relative to the Discontinuance of Certain Ways as Public Ways," it provided that: 
"Upon petition in writing of the board or officers of a town having charge of a public way, the county commissioners may, whenever common convenience and necessity no longer require such way to be maintained in a condition reasonably safe and convenient for travel, adjudicate that said way shall thereafter be a private way and that the town shall no longer be bound to keep the same in repair, and thereupon such adjudication shall take effect; provided, that sufficient notice to warn the public against entering thereon is posted where such way enters upon or unites with an existing public way."  
The commissioners' action in 1932 made the requisite findings and adjudication consistent with the statute.  The abutters contend that the commissioners' action has the legal consequence that the way became "private" such that the public no longer has a right to use the disputed sections of Estabrook Road.  The town contends that although it no longer has the obligation to maintain the disputed sections as a public way, the public continues to have the right to use it.  The judge agreed with the town.
      As always when construing a statute we begin with its language, and here the defendants understandably argue that the language is clear -- that the 1932 action of the commissioners rendered the way "private."  The difficulty with the defendants' argument, however, is that "private way" is not defined in the statute, and the phrase historically has had several meanings.  See Opinion of the Justices, 313 Mass. 779, 782 (1943).  As our case law from the relevant time period explains, the term "private way" may mean a way "of a special type laid out by public authority for the use of the public" (emphasis added).  Id.  On the other hand, "private way" may also "mean or include defined ways for travel, not laid out by public authority or dedicated to public use, that are wholly the subject of private ownership, either by reason of the ownership of the land upon which they are laid out by the owner thereof . . . or by reason of ownership of easements of way over land of another person."  Id. at 782-783.  When a privately owned way has not been laid out or dedicated to public use, a license or permission from the owner to use a private way may be revoked at any time by the owner.  See W.D. Cowls, Inc., 7 Mass. App. Ct. at 19-20.
      Thus, the question becomes whether by adjudicating Estabrook Road "private" under the version of G. L. c. 82, § 32A, in effect in 1932, the commissioners eliminated public rights in the road and gave all the rights to the abutters.  Generally, discontinuance of a town road requires a vote of the town.[5]  See G. L. c. 82, § 21.  See also Mahan v. Rockport, 287 Mass. 34, 37 (1934) ("A town way may be discontinued by vote of the town and not otherwise" [emphasis added]); Zaskey v. Whatley, 61 Mass. App. Ct. 609, 610 n.3 (2004).  Here, the town took no such vote.  Rather, to the extent that § 32A permitted a "discontinuance," it was the result only of a vote of the county commissioners.  The town argues that such a vote -- indeed the purpose of the vote -- was to terminate the town's obligation to maintain the disputed portions of Estabrook Road as a public way "safe and convenient for travel."  Of course, the town has an obligation to maintain a public way in a condition safe for travel.  See Flynn v. Hurley, 332 Mass. 182, 186 (1955).  In contrast, a town does not have any obligation to maintain a statutory private way.  Coombs v. Selectmen of Deerfield, 26 Mass. App. Ct. 379, 383 n.5 (1988).  The parties agree that § 32A eliminated the town's obligation to maintain a road.
      Eliminating the town's obligation to maintain the disputed sections, however, does not necessarily eliminate rights of public access.  The public has a right of access over a private way laid out by a town.  See Flagg v. Flagg, 16 Gray 175, 180 (1860); Moncy v. Planning Bd. of Scituate, 50 Mass. App. Ct. 715, 720 (2001).  See also Denham v. County Comm'rs of Bristol, 108 Mass. 202, 204 (1871) (public easement over private way laid out pursuant to statute on individual's petition "is exactly the same as it is in all other ways laid out by public authority").  And the case law indicates that in the case of an action by the county commissioners under § 32A, the public retains access rights.  Thus in Coombs, 26 Mass. App. Ct. at 381, we said that a proceeding under the version of § 32A in effect in 1932 eliminated "the expense of the town's burden of maintenance, while leaving unimpaired the public's right of access over the road."  And relying in part on Coombs, the Supreme Judicial Court stated that a discontinuance of maintenance by a town under G. L. c. 82, § 32A, "does not extinguish the right of the public, and abutting landowners, to travel over the road," but rather "would create a 'public access' private way."  Nylander v. Potter, 423 Mass. 158, 161 n.7 (1996).[6]  
      The abutters insist that the Coombs and Nylander decisions failed to consider the effect of language requiring a warning to the public not to enter the way.  We decline to attribute to those decisions a failure to consider all of the language in the statute.  Rather, we conclude, as did the courts in Coombs and Nylander, that the intent of G. L. c. 82, § 32A, is to create a statutory private way -- to which the public has the right of access.  
      Our conclusion is buttressed by the fact that the language of G. L. c. 82, § 32A, in effect in 1932 alerting the public to potential dangers of using the road is consistent with the Legislature's treatment of other private ways open to the public.  Since 1846, pursuant to St. 1846, c. 203, §§ 1-3, long before the Legislature enacted what is now G. L. c. 82, § 32A, a town had no liability for ways "opened and dedicated to the public use and [which had] not already become a public way," except that if the public safety so requires, the selectmen of a town shall close the entrance to such a way "or, by other sufficient means, . . . caution the public against entering upon such ways" (emphasis added).  See Nicodemo v. Southborough, 173 Mass. 455, 459 (1899).  If the town failed to take such actions, the town would be liable "for any damages arising from any defects therein, in the same manner as if such ways were duly laid out and established."  St. 1846, c. 203, § 3.  See G. L. c. 84, §§ 23, 24.  
      We think this language strongly signals that warning the public against entering the disputed sections of Estabrook Road was intended to insulate the town from liability; the language was insufficient to formally discontinue public access.[7]  The legislative scheme provided other avenues to discontinue all public rights in the road, and they were not utilized here.  See, e.g., G. L. c. 82, § 21.  We note that the current version of G. L. c. 82, § 32A, has eliminated the distinction between public and private ways, and provides that:
"The board or officers of a city or town having charge of a public way may . . .  upon a finding that a city or town way or public way has become abandoned and unused for ordinary travel and that the common convenience and necessity no longer requires said town way or public way to be maintained in a condition reasonably safe and convenient for travel, shall declare that the city or town shall no longer be bound to keep such way or public way in repair and upon filing of such declaration with the city or town clerk such declaration shall take effect, provided that sufficient notice to warn the public that the way is no longer maintained is posted at both ends of such way or public way, or portions thereof."[8] 
      The defendants contend that the Legislature's intent in adjudicating a public way as a private way was simply to preserve the abutters' easements.  They argue that a discontinuance under G. L. c. 82, § 21, would extinguish all easements including those of abutters, see Nylander, 423 Mass. at 162-163 & n.10, but that transforming a public way to a private way retains the access rights of abutters.  It is true that abutters have certain rights in private ways, but the defendants have provided no support that indicates that the Legislature's sole intent in using the term "private" was to preserve abutters' easement rights.  For all of the foregoing reasons, we conclude that the 1932 adjudication did not terminate all access rights of the public to the disputed sections of Estabrook Road.[9]
      Conclusion.  The judgment shall be modified to declare that the disputed northern and southern sections of Estabrook Road were laid out as a public way prior to 1932 and that the 1932 order of the county commissioners did not terminate the public's access to the disputed sections of the road.  As so modified, the judgment is affirmed.
                                          
 
So ordered.
footnotes

          [1] Anna Rasmussen; Brooks S. Read; Susannah Kay; Russell Robb, III, Leslee Robb, and Thomas Wray Falwell, trustees of the Pippin Tree Land Trust; and president and trustees of Harvard College.  
          [2] We acknowledge the amicus brief of the town of North Andover and Franklin Regional Council of Governments.
                [3] In 1653, the town granted the "proprietors" of "Twenty Score" land in the "North Quarter of Concord" together with the responsibility to keep and maintain highways and bridges in the area.  The judge found that there was reference in a deed to a way laid out by the proprietors in the 1720s, but insufficient evidence to support the conclusion that it was the southern disputed section.
          [4] The attorney asserted that the "road is now almost impassable and is used only by picknickers and is a serious fire hazard." 
          [5] The judge noted that G. L. c. 82, § 32A, as then in effect, did not utilize any form of the word "discontinue" in the text.  "In interpreting statutes we have often found it helpful to examine their titles for language which might be indicative of the legislative intent.  'While the title to a statute cannot control the plain provisions of the enactment, it may aid in the construction of doubtful clauses.'"  Bellows Farms, Inc. v. Building Inspector of Acton, 364 Mass. 253, 258 (1973), quoting Cumberland Farms, Inc. v. Milk Control Commn., 340 Mass. 672, 678 (1960).  The implementing legislation of the version of § 32A in effect in 1932, see St. 1924, § 289, is entitled "An act relative to the discontinuance of certain ways as public ways" and the marginal reference states, "Discontinuance of certain ways as public ways."
          [6] Nylander involved the statute as rewritten by St. 1983, c. 136.  Nothing in the changes to the relevant language, however, would suggest a different result in this respect.
          [7] Pursuant to the 1932 order, however, the town must continue to post notice warning the public against entering the disputed sections.
        
          [8] It was not until 2006 that § 32A was amended to delete warning the public "against entering thereon," and warn, instead, "that the way is no longer maintained."  St. 2006, c. 336, §§ 29, 30.
       
          [9] Because we conclude that the 1763 layout was effective and created a public way and because we conclude that the southern disputed section also had been a public town way and the layout has been lost, and we may affirm on these grounds, we do not address whether Estabrook Road had become public by prescription.